NORTH STAR STEEL CO. *v.* THOMAS ET AL.

No. 94–834.   Argued April 25, 1995—Decided May 30, 1995*

---

*Together with No. 94–835, *Crown Cork & Seal Co., Inc.* v. *United Steelworkers of America, AFL–CIO–CLC,* also on certiorari to the same court.

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, THOMAS, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 37.

*Steven B. Feirson* argued the cause for petitioners in both cases. On the briefs in No. 94–834 were *Vincent Candiello, Wayne D. Rutman,* and *Peter Buscemi.* With Mr. Feirson on the briefs in No. 94–835 was *Jerome A. Hoffman.*

*Laurence Gold* argued the cause for respondents in both cases. On the briefs in No. 94–834 were *Paul Alan Levy* and *Alan B. Morrison.* With Mr. Gold on the briefs in No. 94–835 were *Robert M. Weinberg, Jeremiah A. Collins, Carl B. Frankel, David I. Goldman,* and *David M. Silberman.*

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Days, Deputy Solicitor*

*General Kneedler, Allen H. Feldman, Steven J. Mandel,* and *Judith D. Heimlich.*†

JUSTICE SOUTER delivered the opinion of the Court.

The Worker Adjustment and Retraining Notification Act (WARN or Act), 102 Stat. 890, 29 U. S. C. § 2101 *et seq.,* obliges covered employers to give employees or their union 60 days notice of a plant closing or mass layoff. These consolidated cases raise the issue of the proper source of the limitations period for civil actions brought to enforce the Act. For actions brought in Pennsylvania, and generally, we hold it to be state law.

I

With some exceptions and conditions, WARN forbids an employer of 100 or more employees to "order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U. S. C. § 2102(a). The employer is supposed to notify, among others, "each affected employee" or "each representative of the affected employees." 29 U. S. C. § 2102(a)(1). An employer who violates the notice provisions is liable for penalties by way of a civil action that may be brought "in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business." § 2104(a)(5). The class of plaintiffs includes aggrieved employees (or their unions, as representatives), *ibid.,* who may collect "back pay for each day of violation," § 2104(a)(1)(A), "up to a maximum of 60 days," § 2104(a)(1). While the terms of the statute are specific on

†*Stephen A. Bokat, Mona C. Zeiberg, Jan Amundson,* and *Quentin Riegel* filed a brief for the Chamber of Commerce of the United States of America et al. as *amici curiae* urging reversal.

*Kary L. Moss* and *Mark Granzotto* filed a brief for California Rural Legal Assistance, Inc., et al. as *amici curiae* urging affirmance.

other matters, WARN does not provide a limitations period for the civil actions authorized by § 2104.

In *Crown Cork,* respondent United Steelworkers of America brought a WARN claim in Federal District Court in Pennsylvania, charging Crown Cork & Seal Co., Inc., with laying off 85 employees at its Perry, Georgia, plant in September 1991, without giving the required 60-day notice. Crown Cork moved for summary judgment, claiming that the statute of limitations had run. The District Court denied the motion, holding the source of the limitations period for WARN suits to be Pennsylvania state law and the union's suit timely under any of the arguably applicable state statutes. 833 F. Supp. 467 (ED Pa. 1993). The District Court nevertheless certified the question of the limitations period for immediate interlocutory appeal under 28 U. S. C. § 1292.

The *North Star* respondents are former, nonunion employees of petitioner North Star Steel Company who filed a WARN claim against the company (also in a Federal District Court in Pennsylvania) alleging that the company laid off 270 workers at a Pennsylvania plant without giving the 60-day advance notice. Like Crown Cork, and for like reasons, North Star also moved for summary judgment. But North Star was successful, the District Court holding the suit barred under the 6-month limitations period for unfair labor practice claims borrowed from the National Labor Relations Act (NLRA), 49 Stat. 449, 29 U. S. C. § 160(b), a statute believed by the court to be "more analogous" to WARN than anything in state law. 838 F. Supp. 970, 974 (MD Pa. 1993).

The United States Court of Appeals for the Third Circuit consolidated the cases and held that a period of limitations for WARN should be borrowed from state, not federal, law, reversing in *North Star* and affirming in *Crown Cork.* 32 F. 3d 53 (1994). Like the District Court in *Crown Cork,* the Court of Appeals did not pick from among the several Pennsylvania statutes of limitations that might apply to

WARN, since none of them would have barred either of the actions before it.

The Third Circuit's decision deepened a split among the Courts of Appeals on the issue of WARN's limitations period. See *United Paperworkers Int'l Union* v. *Specialty Paperboard, Inc.*, 999 F. 2d 51 (CA2 1993) (applying state-law limitations period); *Halkias* v. *General Dynamics Corp.*, 31 F. 3d 224 (CA5) (applying NLRA limitations period), rehearing en banc granted, 9 IER Cases 1754 (CA5 1994); *United Mine Workers of America* v. *Peabody Coal Co.*, 38 F. 3d 850 (CA6 1994) (same). We granted certiorari to resolve it, 513 U. S. 1072 (1995), and now affirm.

## II

### A

A look at this Court's docket in recent years will show how often federal statutes fail to provide any limitations period for the causes of action they create, leaving courts to borrow a period, generally from state law, to limit these claims. See, *e. g., Reed* v. *Transportation Union*, 488 U. S. 319 (1989) (claims under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U. S. C. § 411(a)(2), governed by state personal injury statutes); *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143 (1987) (civil actions under Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. § 1964, governed by 4-year statute of limitations of the Clayton Act, 69 Stat. 283, as amended, 15 U. S. C. § 15b); *Wilson* v. *Garcia*, 471 U. S. 261 (1985) (civil rights claims under 42 U. S. C. § 1983 governed by state statutes of limitations for personal injury actions); *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983) (hybrid suit by employee against employer for breach of a collective-bargaining agreement and against union for breach of a duty of fair representation governed by NLRA limitations period). Although these examples show borrowing from federal law as well as state, our practice has left no

doubt about the lender of first resort. Since 1830, "state statutes have repeatedly supplied the periods of limitations for federal causes of action" when the federal legislation made no provision, *Automobile Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 703–704 (1966), and in seeking the right state rule to apply, courts look to the state statute " 'most closely analogous' " to the federal Act in need, *Reed, supra,* at 323, quoting *DelCostello, supra,* at 158. Because this penchant to borrow from analogous state law is not only "longstanding," *Agency Holding Corp., supra,* at 147, but "settled," *Wilson, supra,* at 266, "it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents . . . and that it expect[s] its enactment[s] to be interpreted in conformity with them," *Cannon* v. *University of Chicago*, 441 U. S. 677, 699 (1979). See *Agency Holding Corp., supra,* at 147.*

There is, of course, a secondary lender, for we have recognized "a closely circumscribed . . . [and] narrow exception to the general rule," *Reed, supra,* at 324, based on the common sense that Congress would not wish courts to apply a limitations period that would only stymie the policies underlying the federal cause of action. So, when the state limitations periods with any claim of relevance would " 'frustrate or interfere with the implementation of national policies,' " *DelCostello, supra,* at 161, quoting *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U. S. 355, 367 (1977), or be "at odds with the purpose or operation of federal substantive law," *DelCostello, supra,* at 161, we have looked for a period that might be provided by analogous federal law, more in harmony with the objectives of the immediate cause of action. See, *e. g., Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* 501 U. S. 350, 362 (1991); *Agency Holding Corp., supra,* at

---

*The expectation is reversed for statutes passed after December 1, 1990, the effective date of 28 U. S. C. § 1658 (1988 ed., Supp. V), which supplies a general, 4-year limitations period for any federal statute subsequently enacted without one of its own.

153, 156; *DelCostello, supra,* at 171–172. But the reference to federal law is the exception, and we decline to follow a state limitations period "only 'when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Reed, supra,* at 324, quoting *DelCostello, supra,* at 172.

## B

These cases fall squarely inside the rule, not the exception. The presumption that state law will be the source of a missing federal limitations period was already "longstanding," *Agency Holding Corp.,* 483 U. S., at 147, when WARN was passed in 1988, justifying the assumption that Congress "intend[ed] by its silence that we borrow state law," *ibid.* Accordingly, the Court of Appeals identified four Pennsylvania statutes of limitations that might apply to WARN claims: the 2-year period for enforcing civil penalties generally, Pa. Stat. Ann., Tit. 42, § 5524(5) (Purdon 1981 and 1994 Supp.); the 3-year period for claims under the Pennsylvania Wage Payment and Collection Law, Pa. Stat. Ann., Tit. 43, § 260.9a(g) (Purdon 1992); the 4-year period for breach of an implied contract, Pa. Stat. Ann., Tit. 42, § 5525(4) (Purdon 1981); and the six years under the residual statute of limitations, Pa. Stat. Ann., Tit. 42, § 5527 (Purdon 1981 and 1994 Supp.). See 32 F. 3d, at 61. Since the complaints in both *Crown Cork* and *North Star* were timely even under the shortest of these, there is no need to go beyond the decision of the Court of Appeals to choose the best of four, and it is enough to say here that none of these potentially applicable statutes would be "at odds" with WARN's "purpose or operation," or "'frustrate or interfere with'" the intent behind it. *DelCostello,* 462 U. S., at 161.

The contrast with *DelCostello* is clear. There the Court declined to borrow state limitations periods for so-called

"hybrid" claims brought by an employee against both his employer and his union, for the reason that the state-law candidates "typically provide[d] very short times" for suit (generally 90 days) and thus "fail[ed] to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights." *Id.,* at 166, and n. 15. Here, the shortest of the arguably usable state periods, however, is two years, which is not short enough to frustrate an employee seeking relief under WARN. At the other end, even the longest of the periods, six years, is not long enough to frustrate the interest in "a relatively rapid disposition of labor disputes." See *Automobile Workers, supra,* at 707 (borrowing a 6-year state limitations period for claims brought under § 301 of the Labor-Management Relations Act).

We do not take petitioners to disagree seriously, for the heart of their argument is not that the state periods are too long or too short. They submit instead that, if we look to state law, WARN litigation presents undue risks of forum shopping, such that we ought to pick a uniform federal rule for all claims (with the NLRA, and its 6-month limitations period for unfair labor practices claims, 29 U. S. C. § 160(b), being the federal Act most analogous to WARN). But even taking petitioners on their own terms, they make no case for choosing the exception over the rule. They are right, of course, that the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal action, and correct that some plaintiffs will canvass the variations and shop around for a forum. But these are just the costs of the rule itself, and nothing about WARN makes them exorbitant.

It is, indeed, true that "practicalities of litigation" influenced our rationale for adopting a uniform federal rule for civil actions under RICO. *Agency Holding Corp., supra,* at 153. But WARN's obligations are triggered by a "plant closing" or a "mass layoff" at a "single site of employment,"

29 U. S. C. §§ 2101(a)(2)–(3), and so, unlike RICO violations, do not "commonly involve interstate transactions." *Agency Holding Corp.*, 483 U. S., at 153. WARN thus fails to share the "multistate nature" of RICO, *id.*, at 154, and is so relatively simple and narrow in its scope, see *id.*, at 149 (listing the many categories of crimes that can be predicate acts for a RICO violation), that "no [comparable] practicalities of litigation compel us to search beyond state law for a more analogous statute of limitations," *Reed*, 488 U. S., at 327. Since, then, a state counterpart provides a limitations period without frustrating consequences, it is simply beside the point that even a perfectly good federal analogue exists.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SCALIA, concurring in the judgment.

I remain of the view that when Congress has not prescribed a limitations period to govern a cause of action that it has created, the Court should apply the appropriate state statute of limitations, or, if doing so would frustrate the purposes of the federal enactment, no limitations period at all. See *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 157–170 (1987) (SCALIA, J., concurring in judgment); see also *Reed* v. *Transportation Union*, 488 U. S. 319, 334 (1989) (SCALIA, J., concurring in judgment). The rule first announced in *DelCostello* v. *Teamsters*, 462 U. S. 151, 172 (1983), that a federal limitations period should be selected when it presents a "closer analogy" to the federal cause of action and is "significantly more appropriate," I find to be not only erroneous but unworkable. If the "closer analogy" part of this is to be taken seriously, the federal statute would end up applying in some States but not in others; and the "significantly more appropriate" part is meaningless, since in all honesty a uniform nationwide limitations period for a federal cause of action is *always* significantly more appropriate.

I have joined in applying to a so-called "implied" cause of action the limitations period contained in the federal statute out of which the cause of action had been judicially created. See *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350, 364–366 (1991) (SCALIA, J., concurring in part and concurring in judgment). But the cause of action at issue here was created not by us, but by Congress. Accordingly, in my view, the appropriate state statute of limitations governs.

Because none of the state statutes arguably applicable here would frustrate the purposes of the Worker Adjustment and Retraining Notification Act (WARN), 29 U. S. C. § 2101 *et seq.*, and because the WARN actions before us are timely under even the shortest of those statutes, I concur in the Court's judgment.