Bobbie BANKS, Martha Shields, and Shirley Clincy, on Behalf of Themselves and Others Similarly Situated, Plaintiffs,

v.

JOCKEY INTERNATIONAL, INC., et al., Defendants.

No. 4:96CV253–S–B.

United States District Court, N.D. Mississippi, Greenville Division.

March 9, 1998.

Suzanne Griggins Keys, Byrd & Associates, Jackson, Richard Middleton, Middleton Mixon ORR & Adams, Savannah, GA, for Plaintiffs.

James Wesley Ouzts, Jr., Craig Alan Cowart, Howard Shapiro, Heather Magier, McCalla Thompson Pyburn Hymowitz & Shapiro, New Orleans, LA, for Defendants.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This cause, an ERISA proposed class action alleging four claims, is before the court upon motions to dismiss and for summary judgment by the Jockey defendants. For the following reasons, the court finds that two of the claims should be dismissed and that the entire cause of action should be stayed pending exhaustion of the plaintiffs' administrative remedies.

## FACTS

The plaintiffs filed this suit alleging representation of former and present plan participants as follows: Plaintiff Martha Shields represents participants employed by Jockey when the plant was closed, but who were not rehired. Plaintiff Bobbie Banks represents plan participants employed by Jockey when the plant was closed and who are now back at work at the same facility. Both Shields and Banks received lump sum distributions from the plan at the time the facility was closed. Plaintiff Shirley Clincy represents plan participants not working at the Jockey Belzoni facility when it closed, but who have tried to get benefits under the plan and have been denied early retirement benefits and/or lump sum benefits.[1]

Defendant Jockey owned and operated a sewing plant in Belzoni, Mississippi when representatives of the corporation announced in July of 1993 that the facility would be closed indefinitely. According to the representatives, employees would be laid off beginning September 15, 1993, and that participants of the defined benefit plan would have to either take early retirement if qualified to do so or defer the receipt of benefits until age 65. At the behest of plan participants who objected to the lack of a lump sum distribution option, the Retirement Plan Committee amended the plan in August of 1993 to include lump sum distribution as an option.

W. Floyd Wilkinson, the Director of Human Resources and Corporate Benefits for Jockey, informed the plan participants by letter on September 14, 1993, that the lump sum option had been amended to the plan. At the same time, representatives with Jockey informed the plan participants that they had until October 14, 1993, to elect the form of benefit distribution. By December 15, 1993, the Belzoni facility was closed. In June, 1994, Workforce, Inc., an independent agency, reopened the facility. According to the plaintiffs, Workforce had been hired by Jockey to provide temporary labor services for Jockey during the initial reopening of the Belzoni manufacturing facility. The plaintiffs allege "employees at the Belzoni plant, earning $10.00 an hour prior to the initial closing of the Belzoni plant, were rehired by Workforce, Inc. at a wage rate of $5.00 to $6.00 an hour." One year later, Jockey reopened the facility under its own name continuing with the Workforce pay scale and requiring former employees to repeat the five-year vesting service in order to participate in the Plan.

The plaintiffs further state that on March 6, 1996, their attorneys requested copies of the Plan amendments, Plan termination forms filed with the Department of Labor, and other documents. The plaintiffs state that because the defendants failed to provide the information within the thirty day statutory limit established in ERISA § 502(c)(1), they are entitled to statutory penalties. The plaintiffs further allege a violation of ERISA § 204(h) which requires notice for certain plan amendments, an interference with the attainment of vested rights under ERISA

---

1. Clincy was terminated on November 7, 1983 for using profane and abusive language.

§ 510, and a denial of benefits claim under ERISA § 502(a)(1)(b).

## MOTION TO DISMISS

The Jockey defendants filed a motion to dismiss and motion to strike the jury demand.[2] In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all material allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Garrett v. Commonwealth Mortgage Corp. of America*, 938 F.2d 591, 593 (5th Cir.1991). Such a motion will succeed only if the complainant can prove no set of facts which would entitle the plaintiff to relief. *Id.*

▉ The defendants moved the court for dismissal on the plaintiffs' ERISA § 204(h) claim for failure to state a claim for relief. Under the heading "Notice of significant reduction in benefit accruals," the provision at issue, ERISA § 204(h), 29 U.S.C. § 1054(h), provides:

A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice setting forth the plan amendment and its effective date, to—

(A) each participant in the plan,

(B) each beneficiary who is an alternate payee..., and

(C) each employee organization...

The defendants argue that the Plan amendment adopting a lump sum option was not subject to notice under this provision because the notice requirement pertains only to "future benefit accrual." The plaintiffs respond by asserting that the amendment did in fact affect future benefit accrual because (1) the lump sum option prevented the plaintiffs from taking advantage of the plan break in service provision which would have allowed faster revesting under the plan, (2) the actuarial tables used in determining the lump sum deprived the plaintiffs of future benefits, and (3) that the actuarial figures did not achieve actuarial equivalence.

The court finds that the plaintiffs' claim under ERISA § 204(h), 29 U.S.C. § 1054(h), fails and must be dismissed. As the defendants argue, the amendment merely allowed participants an option in distribution of plan benefits—an option that the participants themselves requested. The availability of a lump sum distribution did not affect a "significant reduction in the rate of future benefit accrual" as anticipated by the notice provision. Therefore, the defendants' motion to dismiss the plaintiffs' claim under ERISA § 204(h) is granted.[3]

## SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Gibson v. Rich*, 44 F.3d 274, 276 (5th Cir.1995).

▉ The defendants argue that the plaintiffs' claim under ERISA § 510, 29 U.S.C. § 1140, is time-barred, and, therefore, should be dismissed.[4] Because Congress did

---

2. The plaintiffs withdrew their jury demand as well as any state law claims which may have been stated.

3. Furthermore, had the notice provision applied, the complaint clearly states that plan participants were informed of the amendment by letter dated September 14, 1993. Lay-offs were slated

to begin September 15 and participants were to elect the form of benefit distribution by October 14, 1993.

4. "Among other things, § 510 prohibits an employer from discharging an employee 'for the purpose of interfering with the attainment of any right to which such participant may become enti-

not provide a statute of limitations for section 510 actions under ERISA, this court must apply the limitations period of the most analogous state law cause of action. *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995). The Fifth Circuit has ruled on the proper characterization of ERISA § 510 claims for limitations purposes and, in so doing, found § 510 claims to be most analogous to wrongful discharge or employment discrimination claims. *McClure v. Zoecon, Inc.,* 936 F.2d 777 (5th Cir.1991). The appropriate statute of limitations for wrongful termination under Mississippi law is the "catch-all" statute of limitations, Miss.Code Ann. § 15–1–49. *Robinson v. Coastal Family Health Center, Inc.,* 756 F.Supp. 958, 961–62 (S.D.Miss.1990). In discrimination cases, the limitations period begins with the prohibited conduct or, for purposes of an ERISA § 510 claim, the wrongful discharge. With regard to plaintiffs Banks, Shields, and the purported members they represent, their last day of work occurred in the fall of 1993, less than three years from the filing of this suit on July 18, 1996.[5] However, no genuine issue of material fact exists concerning the claim of Plaintiff Clincy. Clincy cannot as a matter of law state a prima facie case in that the basis of the plaintiffs' interference claim, as the court understands it, is that the closing of the facility in 1993, and thus the termination of its employees, was action taken for the purpose of interfering with the attainment of the employees' rights under Jockey's defined benefit plan. Because Clincy was terminated in 1983, she is barred by the statute of limitations. Therefore, the defendants' motion for summary judgment on the ERISA § 510, 29 U.S.C. § 1140, claim is granted as to plaintiff Clincy and denied as to plaintiffs Banks and Shields.

 The defendants filed an additional summary judgment motion on the plaintiffs'

claims under ERISA § 502(c) and § 502(a)(1)(B). Participants or beneficiaries are empowered to bring a civil action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits, to enforce rights, or to clarify rights to future benefits under ERISA covered plans. The plaintiffs allege that the actuarial table used in computing the lump sum distributions were inaccurate and resulted in a disparity in the amounts distributed. In their motion for summary judgment, the defendants argue that this claim should be dismissed because the plaintiffs failed to administratively exhaust their remedies or, alternatively, that the action should be stayed pending exhaustion.[6] The plaintiffs argue that they have exhausted their administrative remedies through efforts of counsel, but, however, should the court find that they have not, such exhaustion was not required under the futility exception.

Statutory penalties are allowed under ERISA § 502(c), 29 U.S.C. § 1132(c), when the administrator fails or refuses to comply with a request for plan information by a participant or beneficiary. Because Jockey did not submit plan documents in response to a March 6, 1996, letter by their attorneys, the plaintiffs believe they are entitled to the $100 a day penalty. The defendants argue that the statutory penalties are inapplicable to them.

In an effort to understand the positions of both the plaintiffs and the defendants with regard to the two claims under 29 U.S.C. § 1132, a laborious recitation of events becomes necessary. On December 15, 1993, plaintiffs' counsel, Issac Byrd, Jr., informed Floyd Wilkinson, director of corporate benefits for the plan administrator Jockey International, Inc., by letter that his firm represented current and former employees of the Belzoni facility. Bryd re-

---

tled' under the provisions of an employee benefit plan." *Chailland v. Brown & Root, Inc.,* 45 F.3d 947, 949 (5th Cir.1995).

**5.** The lay-offs began on September 15, 1993, and the facility was deemed closed by December 15, 1993.

**6.** The basic presumption underlying the exhaustion requirement for ERISA is that the grievance results from action of a plan covered by ERISA and that the plan is capable of providing the relief sought by the plaintiff. Exhaustion is not a requirement under the interference with rights provision, ERISA § 510, because no remedy is available through exhaustion. *Chailland v. Brown & Root, Inc.,* 45 F.3d 947.

quested information of benefit amounts and the calculations used in determining those amounts on behalf of 17 listed employees. Additionally, he requested a copy of the plan. Wilkinson replied on December 21 that signed authorizations were needed to release information regarding the individuals' benefits. After complying with the authorization request, plaintiffs' counsel received a summary plan description, a copy of a letter from the actuarial consultant detailing the calculation of the lump sum benefits, and other documentation from representatives of Jockey International, Inc. on February 21, 1994. Plaintiffs' counsel again questioned the calculations in another letter dated March 28, 1994. In response, Jockey's Benefit Specialist, William Tews, replied by explaining the method employed and attached a listing of the distributions made to the plaintiffs along with the factors used in the calculations. In July, plaintiffs' counsel wrote another letter expressing confusion over the calculations. Plaintiffs counsel resubmitted its letter in February of 1995 due to lack of response from Jockey. Over one year later, plaintiffs' counsel wrote yet another letter requesting a copy of the plan amendment, a copy of the final accounting of the plan disbursements, a copy of plan termination forms filed with the Department of Labor, and the specific formula used in determining the lump sum calculations. After receiving several requests for a response, representatives of Jockey informed plaintiffs' counsel Jockey would comply with the request provided the plaintiffs submit 25¢ for copying costs.

ERISA does not contain an exhaustion requirement, but the Fifth Circuit adopted the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied. *Denton v. First National Bank,* 765 F.2d 1295, 1300–03 (5th Cir.1985). In adopting the exhaustion doctrine for ERISA causes of action, the Fifth Circuit found that the doctrine would uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts, and would provide a sufficiently clear record of administrative action if litigation should ensue. *Id.* at 1300. "This is

necessary to keep from turning every ERISA action, literally, into a federal case." *Id.* Application of the exhaustion doctrine is consistent with Congressional intent that ERISA "promote the interests of employees and their beneficiaries in employee benefit plans," and "protect contractually defined benefits." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), *quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). In *Firestone,* the Supreme Court decided the proper standard of judicial review for denial of benefits claims under ERISA. The Court held that a denial of benefits challenged under ERISA § 502(a)(1)(B), § 1132(a)(1)(B), is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits.

Should the court agree with the plaintiffs that exhaustion would be futile, it would essentially be in the position of conducting a de novo review. Such a review would be against the mandates of *Firestone* if the administrator has discretionary authority. Therefore, the reviewing court must look to the authority vested in the administrator via the plan.

According to the Jockey plan, the administrator is Jockey International, Inc. which in turn administers the plan through an appointed Retirement Committee. Article II of the Jockey Plan bestows "full power to administer the Plan and to construe and apply all of its provisions on behalf of the Employer" to the Committee. The Committee's powers include not only deciding questions relating to eligibility, continuity of employment, and amounts of benefits, the Committee additionally has the power "to decide all disputes that may arise with regard to the rights of Employees, Participants and their legal representatives, or Beneficiaries under the terms of the Plan." The plan states unequivocally, "Decisions by the Committee will be deemed final in each case." Because discretionary authority has been vested in the Administrator of the Jockey Plan, judicial

review is limited to the abuse of discretion standard.

In applying the abuse of discretion standard, the court is to determine whether the plan administrator acted arbitrarily or capriciously. *Dowden v. Blue Cross Blue Shield of Texas, Inc.,* 126 F.3d 641, 644 (5th Cir. 1997), *quoting Bellaire General Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 829 (5th Cir.1996). "An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* Under the standard of review, it is the plaintiffs' burden to prove that the administrator of the Jockey plan acted arbitrarily and capriciously. *Id.* Therefore, it is incumbent that the plaintiffs formally exhaust their administrative remedies to the proper party. For that reason, this court finds that the motion by the defendants to stay the cause of action pending formal exhaustion is well taken.

Finally, with regard to the plaintiffs' statutory penalty claim, the court notes that representatives with Jockey timely responded to requests by plaintiffs' counsel on three prior occasions. Because the imposition of the statutory penalty is within the discretion of the court, this court finds that such imposition would be inappropriate in this instance. Therefore, the defendants' motion in regard to the ERISA § 502(c), 29 U.S.C. § 1132(c), claim is granted.

An order in accordance with this opinion shall be issued.

## ORDER GRANTING JOCKEY DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART JOCKEY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In accordance with a memorandum opinion issued concurrently,

IT IS ORDERED:

That the motion to dismiss the ERISA § 204(h) claim is hereby granted;

That the ERISA § 204(h) claim be hereby dismissed with prejudice;

That Jockey Defendants' motion for summary judgment regarding the ERISA § 510 claim as against Plaintiff Shirley Clincy is hereby granted;

That the ERISA § 510 claim of Plaintiff Shirley Clincy be hereby dismissed with prejudice;

That Jockey Defendants' motion for summary judgment regarding the ERISA § 510 claim as against Plaintiff Bobby Banks and Plaintiff Martha Shields is hereby denied;

That Jockey Defendants' motion for summary judgment regarding the ERISA § 502(c) and § 502(a)(1)(B) claims be granted;

That the ERISA § 502(c) claim be hereby dismissed with prejudice; and

That the entire cause of action be stayed pending exhaustion of administrative remedies by the plaintiffs in regard to the ERISA § 502(a)(1)(B) claims.