JANE B. STRANCH, Circuit Judge,
concurring in part and dissenting in part.
I concur with the majority opinion’s holding that the protection against discrimination provided by the Americans with Disabilities Act does not hinge upon establishing that disability was the “sole” cause of an adverse employment action. And I agree that the error this decision corrects resulted from our prior failure to respect the words of the ADA and the rules of statutory construction that must govern our analysis.
For the same reasons — failure to respect the words of the statute as a whole and failure to honor the tenets of statutory construction — I respectfully dissent from *326 the majority’s determination that we now impose a “but for” standard upon those seeking protection under the ADA from discrimination “because of’ disability. Applying the rules we admittedly failed to apply before, I conclude that the plain language of the ADA permits a plaintiff to recover when the plaintiffs disability was a motivating factor in the adverse employment decision.[1]
In analyzing a statute, both language and context matter. To understand the ADA, particularly the “because of’ language in section 102(a), the year in which the ADA was enacted is the key in two respects. First, during 1990, Congress was working on both the ADA and the Civil Rights Act, the latter including amendments to Title VII. This presented a practical problem for implementing Congressional intent to establish the same powers, remedies, and procedures in both the ADA and Title VII: the ADA was enacted in 1990 but not soon enough for its provisions to be specified in the bills that ultimately became the Civil Rights Act; and, the Civil Rights Act was not completed until 1991, too late to be specified in the ADA. Due to this timing issue, Congress chose to effectuate its goal by linking the two statutes, explicitly incorporating Title VII provisions into the ADA by reference. This served two purposes, it linked the statutes and insured that they would proceed in tandem across time.
The second reason the ADA’s year of enactment is key is tied to the instruction that, when analyzing statutory language, we must be mindful of the context in which it was crafted. It is a settled canon of statutory construction that courts will presume Congress was well aware of the prevailing law when it enacted a statute. United States v. Kassouf, 144 F.3d 952, 957 (6th Cir.1998); see also North Star Steel Co. v. Thomas, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) (“[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents ... and that it expect[s] its enactment[s] to be interpreted in conformity with them.”); White v. Burlington N. & Santa Fe R. Co., 364 F.3d 789, 818 (6th Cir.2004) (Sutton, J., concurring in part and dissenting in part) (“[I]t is appropriate to consider other indicators of statutory meaning, analogous Supreme Court precedents and relevant state laws predating the legislation.”). Thus, we are tasked with discerning what Congress intended the phrase “because of’ an employee’s disability to mean when it enacted the ADA.
In 1989, the Supreme Court decided Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), determining what the statutory language “because of’ meant in Title VII. The Court held that where a plaintiff proved gender played “a motivating part” in an employment decision, along with other legitimate factors, the plaintiff established that the decision was “because of’ sex in violation of Title VII. Id. at 250, 109 S.Ct. 1775. This method of proof became known as the “mixed-motive” analysis, see id. at 246-47, 109 S.Ct. 1775, or the “motivating factor” standard. Thus, when Congress enacted the ADA shortly thereafter and chose both to include the “because of’ language and to cross-reference Title VII, it knew that using the Title VII language in an analogous and closely related employment anti-discrimination statute ereat- *327 ed a “motivating factor” standard. See Cannon v. Univ. of Chicago, 441 U.S. 677, 698-99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (“[E]valuation of congressional action must take into account its contemporary legal context.”); Mascio v. Pub. Emps. Ret. Sys. of Ohio, 160 F.3d 310, 315 (6th Cir.1998) (“To understand the intent and purpose behind the legislation in question, it is important to consider the political and legislative context in which it was enacted.”).
The majority ignores these traditional rules of construction and instead declares this ADA case controlled by the Supreme Court’s decision in Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), an Age Discrimination in Employment Act (ADEA) case that applied a “but for” causation standard and not a “motivating factor” standard. The majority errs. The statutory language and enactment context of the ADA makes inapposite an analysis of the ADEA. More about the significance of those differences later. For now, the crucial issue is that the majority ignores the rules of statutory construction that require evaluation of such differences and instead posits an all-or-nothing result. The majority presumes that there are only two ways to interpret Price Waterhouse and the subsequent legal history, including passage of the Civil Rights Act of 1991: either that (1) the language “because of’ in a statute always means “a motivating factor” or (2) it means so only for Title VII and never for any other statute. (Majority Op. at 317-18). Having created this false dichotomy, the majority then presumes that in Gross the Supreme Court adopted the “second theory” — that Congress intended to provide a “motivating factor” standard only to Title VII claimants “but not to claimants under other civil rights statutes.” (Majority Op. at 318). This blanket premise, which infects the majority’s entire analysis, finds validation neither in the rules of statutory construction nor in the case precedent of either the Supreme Court or the Sixth Circuit.[2]
As to the Supreme Court, Gross simply cannot support the weight of the majority’s conclusion. Gross itself teaches that statutory interpretation is an individualized inquiry. Its very language belies blanket applicability as it clearly undertakes an analysis only of the ADEA: “Our inquiry therefore must focus on the text of the ADEA[J” 557 U.S. at 175, 129 S.Ct. 2343. Further, it reminds us that we “must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination”— a rule the majority transgresses here. Id at 174, 129 S.Ct. 2343.
In Hunter v. Valley View Local Schools, 579 F.3d 688, 691 (6th Cir.2009), we took that instruction to heart and refused to presume that Gross employed a broad stroke wiping out the applicability of Title VII standards to other civil rights statutes. We examined the issue and concluded, “Gross thus requires us to revisit the propriety of applying Title VII precedent to *328 the FMLA by deciding whether the FMLA, like Title VII, authorizes claims based on an adverse employment action motivated by both [prohibited factors] and also other, permissible factors.” Id. (holding that Price Waterhouse’s “motivating factor” standard applies to FMLA claims). In Smith v. Xerox Corp., 602 F.3d 320 (5th Cir.2010), the Fifth Circuit gave a similar explication of Gross — in response to the same claim of Gross’s controlling authority. — when it sought to determine whether the “motivating factor” standard from Title VII’s discrimination provision, 42 U.S.C. § 2000e-2, should apply to Title VII’s retaliation provision, 42 U.S.C. § 2000e-3, which did not contain and was never amended to include “motivating factor” language. The Fifth Circuit noted that the textual differences between the ADEA and Title VII guided the Supreme Court’s decision in Gross,[3] and that a “simplified application of Gross” in the Title VII retaliation context, as advocated by Xerox, “would be contrary to Gross’s admonition against intermingling interpretations of the two statutory schemes.” Id. at 328-29 (holding that Price Waterhouse’s “motivating factor” standard applies to Title VII retaliation claims). The Fifth Circuit reached the conclusion applicable here, that “the Price Waterhouse holding remains our guiding light.” Id. at 330.
The majority finds Smith inapposite because it “concerned the use of a ‘motivating factor’ test in a different provision of Title VI” and concludes the Fifth Circuit distinguished Serwatka v. Rockwell Automation, Inc., 591 F.3d 957 (7th Cir.2010) on this basis. (Majority Op. at 321). Smith cannot be dismissed so easily. As the Fifth Circuit itself recognized, the Gross reasoning could be applied to Title VII’s retaliation provision, which had not been amended in 1991 to include a “motivating factor” standard when its discrimination counterpart was so amended. See Smith, 602 F.3d at 328. However, the Smith court rejected “such a simplified application of Gross,” id. at 328, and declined to follow the “broad view of Gross ” adopted by the Seventh Circuit, id. at 329 n. 28. It was this fundamental disagreement regarding Gross’s appropriate scope that led to the Fifth Circuit’s departure from the reasoning in Serwatka, not the title of the statute at issue. Finally, the Fifth Circuit also distinguished Gross as a case on the ADEA, a statute not before that court, as it is not before us. Id. at 329. Thus, this Court’s analysis in Hunter and the Fifth Circuit’s analysis in Smith wholly undercut the majority’s broad conclusion that Gross adopted a theory which grants the “motivating factor” standard to Title VII discrimination claimants but automatically denies it “to claimants under other civil rights statutes.” (Majority Op. at 318).
Because the tenets of statutory construction and case precedent eschew the majority’s presumptions about Gross, we must complete the required task — a careful examination of the ADA itself. We turn to the key wording of the ADA, the prohibition on discrimination “because of’ disability. 42 U.S.C. § 12112(a). We have already explained that in 1989 Price Wa-terhouse defined these Title VII words to entail a “motivating factor” standard that *329 Congress subsequently codified into Title VII, through the Civil Rights Act of 1991. 42 U.S.C. § 2000(e)-2(m). The ADA was passed in 1990, between those events, containing explicit cross-references to Title VU’s powers, remedies, and procedures.
Ignoring that context and declaring blanket applicability of Gross, the majority assumes that the Supreme Court’s ADEA statutory analysis simply transfers to the ADA and disposes of this case through the holding: “We cannot ignore Congress’ decision to amend Title VII’s relevant provisions but not make similar changes to the ADEA.” 557 U.S. at 174, 129 S.Ct. 2343. The majority’s analysis thus hinges on the Title VII amendments in the Civil Rights Act of 1991. However, as the Supreme Court also noted, we must view each statute in its own context. And here context is very important. The ADEA was enacted in 1967, decades before the Price Wa-terhouse holding and without any explicit cross-references to the major substantive provisions of Title VII. The ADA, on the other hand, was conceived in 1990 by a Congress that was well aware of Price Waterhouse and born into a legal context in which “because of’ meant that a “motivating factor” standard applied. And Congress assured that application by expressly including cross-references to Title VII in the initial ADA language.
When the ADA was enacted in 1990, to implement its intended parallel between the statutes, Congress explicitly linked the ADA to Title VII. Section 107(a) of the ADA provides:
The powers, remedies, and procedures set forth in section 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to ... any person alleging discrimination on the basis of disability in violation of any provision of this Act....
42 U.S.C. § 12117(a). This express reference to Title VII emphasizes Congress’s intention that the two statutes be interpreted the same way. Relying on the ADEA analysis, the majority makes much of Congress’s decision not to place the words “motivating factor” directly into the ADA in the 1991 amendments. But, in 1990, Congress had already considered and resolved this proposition for the ADA when it chose, instead, to link the two statutes so that they would always have the same standard:
An amendment was offered ... that would have removed the cross-reference to Title VII and would have substituted the actual words of the cross-referenced sections. This amendment was an attempt to freeze the current Title VII remedies (i.e., equitable relief, including injunctions and back pay) in the ADA. This amendment was rejected as antithetical to the purpose of the ADA — to provide civil rights protections for persons with disabilities that are parallel to those available to minorities and women. By retaining the cross-reference to Title VII, the Committee’s intent is that the remedies of Title VII, currently and as amended in the future, will be applicable to persons with disabilities.
H. Rep. No. 101-485(111) at 48 (1990), reprinted in 1990 U.S.C.C.A.N. 445 at 471 (House Report for the ADA). The date of passage, the different legal context, and the intentionally different language of the ADA renders Gross’s analysis of the ADEA simply inapplicable to the ADA.[4]
*330 Though the textual analysis above and the legal context of the ADA’s passage should be dispositive, the Civil Rights Act amendments do have a role in this case, albeit not the one the majority presses. First, the amendments reinforce the availability of mixed-motive claims under Title VII in the wake of the Supreme Court’s Price Waterhouse decision. See 42 U.S.C. §§ 2000e-5(g)(2)(B), 2000e-2(m) (both expressly referencing mixed-motive or motivating-factor claims). More importantly, Congress used those amendments to codify the “motivating factor” standard into the ADA through the Title VII provisions that it had previously incorporated into the ADA. See 42 U.S.C. § 12117(a) (incorporating enumerated Title VII sections). Those incorporated sections include the “Enforcement Provisions” set out in section 706(g)(2)(B) of Title VII, which directly reference the “motivating factor” standard. 42 U.S.C. § 2000e-5(g)(2)(B). Thus, the Civil Rights Act implemented the prior Congressional decision by inserting in Title VII, and thereby including in the ADA, the “motivating factor” language.
Because the ADA as enacted by Congress made available in ADA actions for employment discrimination the very same remedies available in Title VII actions, passage of the remedial amendments to Title VII had the effect of amending the ADA as well.
Rights of Americans with Disabilities (Americans with Disabilities Act of 1990, ns amended, through 1991, 42 U.S.C. §§ 12101-12213), 5-22A Civil Rights Actions P 22A.01 (Matthew Bender & Co., Inc.2011).
The majority ignores this express linkage, arguing that “incorporation of Title VII’s enforcement ‘powers, remedies, and procedures’ into the ADA does not pull the ‘motivating factor’ standard along with them.” (Majority Op. at 319). But there is no need to “pull” the “motivating factor” standard from Title VII into the ADA because Congress had already chosen to use the words expressing that standard and had already tied the ADA to Title VII in 1990. Simply put, the ADA is not the ADEA and the majority is not free to treat the words of the ADA as if they exist in a vacuum. See Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (“[Statutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.”).
Viewing the statute in context and in accordance with the tenets of statutory construction, the ADA includes a right of recovery under a “motivating factor” standard. For these reasons alone, I would join the majority of circuits that have interpreted the ADA to allow a plaintiff to establish a claim by showing that his or her disability was a motivating factor in an adverse employment decision.[5] See, e.g., *331 Pinkerton v. Spellings, 529 F.3d 513, 518—19 & n. 30 (5th Cir.2008) (collecting cases).
Those reasons are further supported by legislative history. The majority finds legislative history inapposite because appeals to it were unsuccessful in Gross. (Majority Op. at 320). Once again, the history of the ADEA is not the history of the ADA. And a further investigation of legislative history of the ADA makes it exceedingly difficult to support a view that limits the available recovery for disability discrimination as compared to recovery for race, color, religion, sex, and national origin discrimination under Title VII:
And they should be parallel. The remedies for victims of discrimination because of disability should be the same as the remedies for victims of race, color, religion, sex, and national origin discrimination .... The remedies should remain the same, for minorities, for women, and for persons with disabilities. No more. No less.
101 Cong. Rec. 2599, 2615 (daily ed. May 22, 1990) (statement of Rep. Edwards). As a House Report for the ADA explained, “if the powers, remedies and procedures changed in Title VII ..., they will change identically under the ADA for persons with disabilities.” H. Rep. No. 101-485(111) at 48 (1990), reprinted in 1990 U.S.C.C.A.N. 445 at 471. “[T]he purpose of the ADA [is] to provide civil rights protections for persons with disabilities that are parallel to those available to minorities and women.” Id.
The remedies should be the same; no more, no less. The majority’s decision makes an ADA plaintiffs remedy decidedly less. Moreover, an incorporated remedy that is made unavailable by the courts constitutes a failure to give meaning and effect to the words Congress selected to include in the statute. This violates elementary tenets of statutory construction: “[T]he inquiry begins with the fundamental purpose of judicial construction of statutes, which is to ascertain and give effect to the original meaning of the words used by Congress[.]” Appoloni v. United States, 450 F.3d 185, 199 (6th Cir.2006). We thus “begin with the understanding that Congress ‘says in a statute what it means and means in a statute what is says there.’ ” Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting Conn. Nat’l Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).
I believe the majority’s determination that a “but for” standard applies to the ADA fails to honor the rules of statutory construction by which we are bound and thereby fails to respect the clear intention of Congress. The plain language of the ADA, the legal context of its passage, and the debate and commentary explicating Congressional purpose all evidence the decision by Congress that the ADA is to be interpreted and enforced in a manner parallel with Title VII, including its “motivating factor” standard of liability. Because I believe the courts are not free to disregard that Congressional instruction, I respectfully dissent.

. As the majority recognizes in its opening, this case is about the ADA language prior to the Congressional revisions in 2008. Thus, only the pre-2008 statute is before this Court.
Since we are not called upon nor authorized to opine on the post-2008 ADA, any conclusions offered on the current ADA are dicta.

. The majority challenges the lower court citations herein, claiming none “holds up.” (Majority Op. at 321). But they do because they establish that neither the other circuits cited nor we ourselves have bought into the premise underlying the majority opinion, that Congress intended a “motivating factor” standard to apply only to Title VII but not to "other civil rights statutes.” (Majority Op. at 318). That the ultimate outcome in those cases may relate to factors not present in our case is of no moment. The issue is that in the cases cited the courts fully review the statutory language at issue to determine what each statute or section of a statute means, the very analysis this dissent argues is required. The cited decisions, including our own, hold up because they do not accept the blanket and constricting premise the majority opinion now posits.

. The Supreme Court bolstered its decision in Gross by noting that the ADEA and Title VII have been treated differently by courts in several respects, including in the applicability of Title VII’s McDonnell Douglas burden-shifting framework, which the Supreme Court has not definitively decided to apply in the ADEA context. 557 U.S. at 175 n. 2, 129 S.Ct. 2343. That argument favors a different result here as the McDonnell Douglas framework has been applied to the ADA. See Raytheon Co. v. Hernandez, 540 U.S. 44, 53-54, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003).

. Congress’s silence in amending the ADEA in the 1991 amendments may suggest the intentional line-drawing of Congress between the ADEA and Title VII, which were not linked. However, given the legal context of the ADA and its intentional linking to Title VII, that *330 same silence for the ADA means the opposite — it means Congress wanted to keep the existing system of treating ADA claims consistently with Title VII claims.

. The Seventh Circuit, following the Supreme Court's decision in Gross, has abrogated its prior precedent holding that mixed-motive claims are viable under the ADA. Serwatka v. Rockwell Automation, Inc., 591 F.3d 957 (7th Cir.2010). In doing so it relied on the rationale that the ADA's liability provision, 42 U.S.C. § 12112, does not explicitly reference "mixed-motive” or "motivating factor” claims as Title VII does, see 42 U.S.C. § 2000e-2(m). I disagree with the failure in Serwatka to give the context of the ADA's enactment and its incorporation of Title VII's mixed-motive remedies provision their proper weight. Cf. Smith, 602 F.3d at 329 n. 28 (distinguishing Serwatka and rejecting the Seventh Circuit’s *331 "broad view” of Gross). Therefore, I believe Serwatka is an incorrect interpretation of the ADA.