**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

NO. 97-10334

JOHN HALKIAS, ET AL.,

Plaintiffs

DAWN DEE BRYANT; BARRY JACKSON,

Plaintiffs-Appellants

VERSUS

GENERAL DYNAMICS CORPORATION,

Defendant-Appellee

JAMES ANTHONY CUREINGTON,

Plaintiff

VERSUS

GENERAL DYNAMICS CORPORATION,

Defendant

Appeal from the United States District Court
For the Northern District of Texas

April 1, 1998

Before JOLLY, DUHE' and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

**I.**

**FACTS & PROCEDURAL HISTORY**

On January 13, 1988, General Dynamics and McDonnell Douglas Corporation were awarded a contract by the United States Navy to

**1**

jointly develop a new generation of carrier-based, medium attack aircraft to be known as the A-12 "Avenger". The contract contained several provisions reflecting a concern for the abusive cost overruns of the past. Costs between the target price of $4.4 billion and the ceiling price of $4.8 billion would be shared by the government and the contractors (60% by the government and 40% by the contractors). All costs over the ceiling price would be absorbed by the contractors.

By May, 1990, the A-12 contractors had incurred substantial unforeseen production difficulties and by its own estimate, General Dynamics concluded that the cost of completion would be $700 million more than planned. On June 13, 1990, the contractors notified the Navy that the costs of completion would overrun the contract ceiling by an amount that the contractors could not absorb. Throughout the remainder of 1990 production continued amidst various attempts to restructure the contract, which did result in a new delivery schedule. However, the Navy would not agree to change the contract ceiling price. Meanwhile, the threat of contract cancellation loomed overhead.

On December 14, 1990, the Secretary of Defense directed the Navy to show cause by January 4, 1991, why the A-12 contract should not be canceled. Later that same day, General Dynamics received informal notice of the Secretary's show cause order. On December 17, 1990, the Navy gave the contractors notice that their performance on the A-12 contract was "unsatisfactory" and that unless specified conditions were met by January 2, 1991, the

contract might be terminated. On December 20, 1990, General Dynamics issued a special bulletin to all of its employees notifying them that the A-12 contract was in jeopardy and promising to provide notices the next day to each individual employee who might lose his or her job. As promised, on December 21, 1990, General Dynamic sent out individual notices to all potentially affected employees, providing official but conditional notification that they might be terminated in the event that the A-12 contract were canceled. On January 7, 1991, Secretary Cheney announced his decision to terminate the A-12 contract effective immediately. As a result General Dynamics immediately began laying off affected employees. Approximately 2000 non-union salaried employees were laid off from General Dynamics' Fort Worth, Texas, and Tulsa, Oklahoma, facilities.

On November 24, 1992, Plaintiff John Halkias filed suit under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (1988)(the "WARN" act), claiming that General Dynamics had failed to comply with the Act's sixty-day notice requirement. The district court certified a class of non-union salaried employees and designated John Halkias as class representative. On June 24, 1993, the district court granted General Dynamics' Fed. R. Civ. P. 12(c) motion to dismiss holding that the six-month statute of limitations of the National Labor Relations Act, 29 U.S.C. § 160(b), was applicable to actions under the WARN Act, and Plaintiff appealed to this Court. On July 11, 1995, this Court reversed the district court and remanded the case following *North Star Steel v.*

*Thomas*, ___ U.S. ___, 115 S. Ct. 1927, 132 L. Ed. 2d 27 (1995), which held that state law rather than the NLRA provided the relevant statute of limitations for actions under the WARN Act. *Halkias v. General Dynamics Corp.*, 56 F.3d 27 (5th Cir. 1995).[1]

On October 3, 1995, the district court determined that the Texas four-year statute of limitations for actions for debt, Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3)(Vernon 1986), was the most analogous to actions under the WARN Act and denied General Dynamics' Rule 12(c) motion. Since this holding was at odds with a holding by the district court for the western district of Texas, the district court granted General Dynamics the right to take an interlocutory appeal on October 6, 1995, which invitation General Dynamics accepted. Over one year later, on October 22, 1996, following the decision in *Staudt v. Glastron, Inc.*, 92 F.3d 312 (5th Cir. 1996), this Court affirmed the district court's ruling concerning the statute of limitations and remanded the case. *Halkias v. General Dynamics Corp.*, 101 F.3d 698 (5th Cir. 1996)(table).

On December 12, 1996, the district court issued a scheduling order establishing July 31, 1997, as the deadline for completion of discovery. On January 16, 1997, General Dynamics filed its motion for summary judgment, arguing that sixty-day advance written notice was not required in this case, because the layoffs were "caused by business circumstances that were not reasonably foreseeable as of

---

[1]During the pendency of this appeal, Plaintiff John Halkias passed away, and on remand his widow, Billie Halkias, was substituted as Plaintiff and Appellant Dawn Dee Bryant was substituted as class representative.

the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).  In response Appellants sought to have General Dynamics' motion for summary judgment continued so that more discovery might be conducted in accordance with Fed. R. Civ. P. 56(f) .  That motion was denied.  The motion for summary judgment was fully briefed, and on March 5, 1997, the district court granted it.  Plaintiffs-Appellants have taken this appeal raising the following issues:

1.   Did the district court err by refusing to continue General Dynamics' motion for summary judgment so that additional discovery might be conducted in accordance with Fed. R. Civ. P. 56(f)?

2.   Did the district court err by granting General Dynamics' motion for summary judgment?

## II.

## LAW & ANALYSIS

## A.

## The WARN Act

The WARN Act provides that:

> "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order ... to each representative of the affected employees as of the time of the notice, or if there is no such representative at that time, to each affected employee...."

29 U.S.C. § 2102 (a)(1).  However, the Act further provides that;

> "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not *reasonably foreseeable* as of the time that notice would have been required ... An employer relying on this subsection shall give as much notice as is practicable and at that time shall give a brief statement

5

of the basis for reducing the notification period."
29 U.S.C. § 2102 (b)(2)(A) & (b)(3)(emphasis added). This case centers around the proof in support of and against the proposition that General Dynamics should have reasonably foreseen the impending contract cancellation and therefore cannot avail itself of the exception in § 2102(b)(2)(A). This Court reviews a district court decision to grant summary judgment *de novo*, applying the same standard as the district court. *Wynn v. Washington National Insurance Company*, 122 F.3d 266, 268 (5th Cir. 1997), *citing Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

General Dynamics argues that the cancellation of the A-12 contract and the resultant layoffs did not become reasonably foreseeable until December 14, 1990, at the earliest if at all, when General Dynamics learned through informal channels that Secretary Cheney had issued an order to the Navy requiring it to show cause why the A-12 program should not be terminated. General Dynamics argues that from December 14 until official notice was given to all affected employees on December 21, 1990, it acted with due diligence in an attempt to identify those employees who would be affected and to prepare the appropriate notices in compliance with § 2102 (b)(3). General Dynamics argues that it reasonably believed that the program would not be terminated, in spite of serious cost overruns and a projected production delay of 22 months, because both the Navy and Secretary Cheney still expressed very high support for the program.

Appellant argues that General Dynamics knew or should have

**6**

known that the A-12 contract would be canceled.  As evidence that the cancellation was reasonably foreseeable, Appellant offered the testimony of its expert, Dr. Lawrence Korb, in another WARN Act case arising out of these layoffs, wherein Dr. Korb testified that General Dynamics knew as early as October, 1990, that if it did not pass the Defense Acquisition Board's review in December, 1990, the project would not go forward.[2]  Appellant also offered various minutes from General Dynamics' board of directors meetings wherein the A-12 project and its possible termination were discussed. Appellant argued that those minutes showed that General Dynamics' CEO Stanley Pace was aware of the cancellation of a similar Lockheed aircraft project because of cost overruns and production delays.

Before we may review the evidence, some clarification of the precise question before this Court is in order.  We must determine whether the evidence before the district court supported a finding, as a matter of law, that 60-days before the layoffs in this case General Dynamics could not reasonably have foreseen the cancellation of the A-12 contract which precipitated these layoffs. Yet, the question of reasonable foreseeability begs another question:  by adopting "reasonable foreseeability" as a standard, does the WARN Act envision the probability of an unforeseen business circumstance (i.e. the contract cancellation) or instead the mere possibility of such a circumstance?  We can only conclude

---

[2]The cited testimony of Dr. Korb was in *International Association of Machinists and Aerospace Workers, AFL-CIO v. General Dynamics Corp.*, 821 F. Supp. 1306 (E.D. Missouri 1993).

that it is the probability of occurrence that makes a business circumstance "reasonably foreseeable" and thereby forecloses use of the § 2102(b)(2)(A) exception to the notice requirement. A lesser standard would be impracticable. Since cancellation is a possibility every time there is a cost overrun, defense contractors like General Dynamics would be put to the needless task of notifying employees of possible contract cancellation and concomitant lay-offs every time there is a cost overrun, and experience teaches us that there are invariably cost overruns, which most often do not lead to contract cancellation.

**B.**

**The Evidence**

Having reviewed the summary judgment evidence closely, we must conclude that the district court properly granted summary judgment. There is no doubt that the evidence showed General Dynamics' board of directors knew of the possibility of contract cancellation and mass lay-offs as early as June, 1990. In particular, as early as June 6, 1990, minutes of the General Dynamics board of directors meeting indicate that the board was aware of the likelihood of a substantial cost overrun and production delay, that the Navy and Department of Defense were aware of these problems and that General Dynamics had begun negotiations with the Navy and Department of Defense to restructure the contract.

At the August 1, 1990, meeting of the board of directors, the Chairman of the board, Mr. Stanley Pace discussed with the board members the recent experience of the Lockheed corporation in its

**8**

development of an aircraft for the Navy. It was reported by Mr. Pace that Lockheed had received insufficient assistance from the Navy when it experienced the same sort of problems that General Dynamics was experiencing with the A-12 program. Mr. Pace reported that the Lockheed contract was eventually canceled and that Lockheed's experience might be indicative of what General Dynamics could expect. On October 16, 1990, Mr. Pace again addressed the board of directors regarding the A-12 contract. He indicated that the program was due to be reviewed by the Defense Acquisition Board ("DAB") on December 7, 1990, and that the DAB would be considering all aspects of the program, including termination of the contract. Finally, on November 7, 1990, Mr. Pace informed the board that, although recent congressional enactments did not cancel the remaining options under the A-12 contract, those bills did allow Secretary Cheney to take action to address the huge cost overruns and production delays in the program.

Therefore, by November 7, 1990, it is clear that three *possibilities* existed. Either the contract would be restructured, the contract would be canceled, or General Dynamics would simply default rather than absorb the cost overruns. The minutes of various board meetings would support a jury's conclusion that the board was aware of the *possibility* that the contract would be canceled. Nevertheless, the evidence in mitigation of the potential for contract cancellation, precludes that possibility from becoming a probability. As noted previously, the Navy and Secretary Cheney had expressed their continuing support for the A-

**9**

12 program up to the last minute. Given that unwavering support, it seemed less than probable that the contract would be canceled. Therefore, even if the evidence presented a good faith dispute as to the possibility of contract cancellation, in the face of the Navy's and Secretary Cheney's continuing support, no rational jury could have concluded that contract cancellation was a foreseeable probability until the last minute, i.e., December 14, 1990.

## III.

## CONCLUSION

Having concluded that summary judgment was appropriate, we affirm. We do not reach the question of whether the district court erred by refusing to allow further discovery before ruling on General Dynamics' motion for summary judgment. Appellants have not demonstrated to this Court that further discovery would lead to any evidence, which might raise the A-12 contract cancellation from a possibility to a probability any sooner than December 14, 1990. AFFIRMED.