business on or before January 19, 1996. MIHI, however, had operated under financial difficulties for years, yet managed to stay in operation and continue to do business with its primary customer, Dana. Moreover, the closing at a particular time was not made reasonably foreseeable by the expert's determination that MIHI would fail as a going concern sometime in the future. Thus, we conclude that the district court correctly held that the report did not preclude summary judgment in this case.

AFFIRMED.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0404P (6th Cir.)
File Name: 02a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT WATSON, SR.;
DENNIS STETLER; ALBERT P.
BLOSSOM; DEBRA
WOODWORTH; RONALD R.
HOMMINGA; JACKIE HENRY;
HEATHER CHRISTIE,
    *Plaintiffs-Appellants,*

        *v.*

MICHIGAN INDUSTRIAL
HOLDINGS, INC.; MASON
SPECIALTY FORGE, INC.;
MASON PRECISION FORGE,
INC.; MASON FORGE AND DIE,
INC.; HORIZON INDUSTRIAL
GROUP, INC.; ANDREAS
ZYBELL; KENNETH SMITH;
PRO STAFF, INC.,
    *Defendants-Appellees.*

No. 01-1136

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-76034—Patrick J. Duggan, District Judge.

Argued: August 2, 2002

Decided and Filed:  November 21, 2002

Before:  SILER, COLE, and CLAY, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Mark P. Fancher, SUGAR LAW CENTER FOR
ECONOMIC AND SOCIAL JUSTICE, Detroit, Michigan,
for Appellants.  Mark D. Evans, EVANS & PARKER,
Bloomfield Hills, Michigan, for Appellees.  **ON BRIEF:**
Mark P. Fancher, Julie H. Hurwitz, SUGAR LAW CENTER
FOR ECONOMIC AND SOCIAL JUSTICE, Detroit,
Michigan, Kenneth M. Gonko, THE DANIELSON GROUP,
P.C., St. Clair Shores, Michigan, for Appellants.  Mark D.
Evans, EVANS & PARKER, Bloomfield Hills, Michigan,
Brian J. Richtarcik, Bloomfield Hills, Michigan, for
Appellees.

_____

**OPINION**

_____

   SILER, Circuit Judge.  On January 19, 1996, defendant
Michigan Industrial Holdings, Inc. ("MIHI") posted a notice
announcing the immediate and permanent closing of its
Jackson, Michigan facility.  Plaintiffs Robert Watson Sr.,
Dennis Stetler, Albert P. Blossom, Debra Woodworth, Ronald
R. Homminga, Jackie Henry and Heather Christie, former
employees of MIHI, brought this action pursuant to the
Worker Adjustment and Retraining Notification (WARN)
Act, 29 U.S.C. § 2101-2109, alleging that defendants MIHI,
Pro Staff, Inc. ("PSI"), Mason Specialty Forge, Inc., Mason
Precision Forge, Inc., Mason Forge and Die, Inc., Horizon
Industrial Group, Inc., Andreas Zybell and Kenneth Smith
violated the WARN Act by failing to provide sixty days'
advance notice of their termination in connection with the
closing of MIHI's plant. The district court granted summary

disputed issues of material fact, which would preclude
summary disposition of this case.

   Accordingly, we conclude that the circumstances of this
case are well within the unforeseeable business circumstances
exception to the WARN Act.  Dana's decision to stop paying
MIHI and to terminate its relationship with MIHI, causing
MIHI to close its plant, was a sudden, unexpected action out
of MIHI's control.  Plaintiffs have provided no evidence to
refute the fact that MIHI's belief that its relationship would
continue with Dana through 1996 was commercially
reasonable.  Thus, MIHI was excused from the WARN Act's
notice requirement under the unforeseeable business
circumstances exception.

   Finally, we must address plaintiffs' contention that the
district court erred when it declined to consider the report of
their expert in deciding the motion for summary judgment and
also when the court denied their motion to alter or amend the
judgment.  Plaintiffs argue that the report warrants setting
aside the summary judgment.

   Plaintiffs never provided any explanation as to why a copy
of the report was not provided to the court or to the
defendants prior to the hearing on October 5, 2000.
Regardless, the district court considered the report but found
that "[n]othing in the . . . report, however, rebuts the fact that
the January 19, 1996 plant closing was caused by Dana's
refusal to pay Defendant MIHI in accordance with their
ordinary practice.  Instead, [the report] simply asserts that
based upon Defendant MIHI's shaky financial condition, it
was foreseeable at least two months prior to January 19, 1996,
that Defendant MIHI would be forced to close its doors
sometime in the future."

   The premise of plaintiffs' argument is that a similarly
situated employer exercising commercially reasonable
business judgment would have known, based on MIHI's
shaky financial condition, that MIHI was going to go out of

doors when there is a *possibility* that the business may fail at some undetermined time in the future. Such a reading of the Act would force many employers to lay off their employees prematurely, harming precisely those individuals WARN attempts to protect. A company that is struggling to survive financially may be able to continue on for years and it was not Congress's intent to force such a company to close its doors to comply with WARN's notice requirement. "Where, as here, a company is struggling to survive financially . . . the timing of closing may be uncertain and unpredictable." *Id*. at 185 n.7 (rejecting argument that WARN notice is required when there is a possible but unlikely closing).

Thus, when determining whether a closing was caused by an unforeseeable business circumstance, a court must evaluate whether the closing was foreseeable and not whether the eventual demise of the business was inevitable. Accordingly, the appropriate inquiry in this case, as dictated by the regulations and applied by the district court, is whether, in MIHI's "commercially reasonable business judgment," Dana's refusal to pay and corresponding termination of business with MIHI in January 1996, was foreseeable; or was it "sudden and unexpected" enough to excuse MIHI from providing advance notice of the closing.

Based on the evidence presented in the record, it is clear that the closing of MIHI's plant was the direct result of the sudden and unexpected actions taken by Dana on January 19, 1996. It was not reasonably foreseeable on November 19, 1995, sixty days prior to the plant's closing on January 19, that Dana would refuse to pay MIHI and terminate its business relationship with MIHI. At the time notice would have been required, MIHI was producing parts for Dana and in its commercially reasonable business judgment believed that it would do so well into 1996. Furthermore, Dana admits that it provided no notice to MIHI concerning its intentions not to pay on January 19 and its plans to discontinue its business relationship with MIHI. Contrary to plaintiffs' assertion, the evidence does not show that there are any

judgment in favor of the defendants, finding that the unforeseeable business circumstances exception in 29 U.S.C. § 2102(b)(2)(A) relieved MIHI from any requirement under the WARN Act to provide advance notice of the Jackson plant closing. For the reasons that follow, we affirm.

**Facts**

MIHI was a Michigan Corporation formed around 1991. It purchased various assets of Columbus Auto Parts, including equipment used in forging automobile parts for the Dana Corporation ("Dana"), and established a facility in Jackson, Michigan. From its inception, MIHI supplied forgings to Dana under written supply agreements that were apparently renegotiated on a yearly basis. Dana purchased both aftermarket parts and original equipment parts from MIHI. The original equipment orders were the most lucrative for MIHI. During this relationship, MIHI and Dana often engaged in disputes regarding the quality of MIHI's product.

Around this same time, MIHI and Dana were engaged in discussions to continue their relationship past the expiration of the written supply agreement which was due to expire on August 31, 1995. On August 25, 1995, MIHI's president, Michael Galvin, met with Dana's general manager, Gary Bleckner, to discuss the future of their business relationship. According to MIHI, it was reassured during this meeting that it would continue to be a Dana supplier at least through the end of 1996. Ultimately, the contract was not renewed and business continued between the two companies on a month-to-month basis.

At the same time, Dana was apparently preparing another supplier, the W.P. Crow Company ("Crow"), to produce the original equipment parts that were previously produced by MIHI. An internal memo dated August 28, 1995, prepared by Bleckner, reflects that Dana planned to continue ordering original equipment parts from MIHI through February 1996 and that it intended to have MIHI produce twelve months of

aftermarket parts which would have taken at least six months to a year to produce. Although MIHI was aware that Dana was preparing Crow to produce parts, MIHI believed that it was Dana's only viable supplier. During July or August 1995, Dana had shipped steel to MIHI from Crow and directed MIHI to produce parts that Crow was unable to produce. MIHI concluded that Dana needed MIHI more than ever because MIHI could not be replaced as a supplier without significant expense and lead time.

MIHI and Dana had numerous discussions about continuing their business relationship after the expiration of their written agreement in August. In a letter dated October 12, 1995, Dana advised MIHI that it intended to increase the aftermarket volumes for January and February 1996 from $450,000 to $750,000. Dana also expressed that it was "taking extraordinary steps to support MIHI as a future supplier of aftermarket parts." MIHI continued to pursue future business with Dana despite Dana's intention to use Crow and in a letter dated December 5, 1995, MIHI presented pricing information through December 1996.

MIHI did in fact continue to produce parts for Dana up until it closed its doors on January 19, 1996. At the time of the closing, due to MIHI's stressed financial condition and cash flow restraints, MIHI and Dana were operating on payment terms that required Dana to pay MIHI within seven days after being invoiced. On January 19, 1996, Dana's weekly payment did not arrive, as was the ordinary and usual course of dealing between the parties. Galvin traveled to Dana's office to pick up the check, at which time he was informed for the first time that Dana did not intend to pay MIHI. As a consequence of Dana's refusal to issue MIHI a check, MIHI was forced to close its doors and discontinue production. Dana admits that it did not give MIHI any prior notice that it was going to cease doing business with it.

upon the non-renewal of the supply agreement, MIHI's demise was entirely foreseeable and, therefore, WARN required that MIHI select a date to wind up its business and provide its employees with sixty days notice.

When determining whether a closing was caused by an unforeseeable business circumstance, a court must evaluate whether a "similarly situated employer" in the exercise of commercially reasonable business judgment would have foreseen the closing. 20 C.F.R. § 639.9(b)(2). "[A] company will be excused from WARN liability if, when confronted with potentially devastating occurrences, it reacts as would reasonable employers within its own market." *Loehrer*, 98 F.3d at 1061; *see also Elsinore*, 173 F.3d at 186 ("[W]e consider the facts and circumstances that led to the closing in light of the history of the business and of the industry in which that business operated."). In making this determination, a reviewing court must be careful to avoid analysis by hindsight and remember that an employer's commercially reasonable business judgment dictates the scope of this exception. *See Loehrer*, 98 F.3d at 1061 ("The Act and its regulations necessarily recognize that even the most conscientious employers are not perfect, and they thus allow needed flexibility for predictions about ultimate consequences that, though objectively reasonable, proved wrong."). Furthermore, it is the "probability of occurrence that makes a business circumstance 'reasonably foreseeable,'" rather than the "mere possibility of such a circumstance." *Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333, 336 (5th Cir. 1998).

The WARN Act was adopted in response to the extensive worker dislocation in the 1970s and 1980s when companies were merged, acquired or closed without notice. *See Elsinore*, 173 F.3d at 182. Congress enacted WARN to protect workers and their families from these situations by requiring employers to provide notification sixty days in advance of a plant closing. *See* 20 C.F.R. § 639.1(a). WARN was not intended to force financially fragile, yet economically viable, employers to provide WARN notice and close its

the closing." *Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 180 (3d Cir. 1999); *see also Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996) ("In formulating regulations interpreting [the unforeseeable business circumstances] exemption, the [DOL] was reluctant to list examples of events that would, without deviation, qualify as unforeseeable business circumstances. Rather, the DOL indicated that the propriety of utilizing the exception in any particular scenario involves a highly factual inquiry to be assessed on a case by case basis.") (citations omitted). The regulations, however, do suggest that circumstances that are "sudden, dramatic, . . .unexpected . . . [and] outside of the employer's control" generally fall within this exception. 20 C.F.R. § 639.9(b)(1). Among the circumstances that may be unforeseeable is " [a] principal client's sudden and unexpected termination of a major contract with the employer." *Id*.

Plaintiffs contend that the district court improperly ruled that MIHI's failure to provide advance notice of its plant closing was the result of an unforeseeable business circumstance - Dana's failure to pay for shipped goods. By isolating this one specific event and ignoring other factors that contributed to MIHI's fragile financial health and dubious prospects for survival, namely MIHI's loss of its supply contract with DANA in August 1995, plaintiffs argue that the court failed to employ the "totality of the objective factual circumstances" standard articulated in *Jones v. Kayser-Roth Hosiery, Inc.*, 748 F. Supp. 1276, 1288 (E.D. Tenn. 1990).[3] In light of MIHI's dire financial health, plaintiffs assert that

---

[3] *Jones* does not introduce a different standard as the plaintiffs seem to assert. The *Jones* court merely stated that "in light of the totality of the objective factual circumstances" it was not commercially reasonable for the employer to rely on personal, subjective beliefs. *Jones*, 748 F. Supp. at 1288. The regulations provide the appropriate standard, which the district court cited and applied to the facts of this case. Moreover, the district court considered the totality of the objective factual circumstances in reaching its conclusion.

## Procedural Background

A group of former MIHI employees filed suit alleging that defendants MIHI and PSI violated the WARN Act by failing to provide sixty days' advance notice regarding the closure of MIHI's plant. Plaintiffs also alleged that liability extended to the other named defendants by virtue of the "single employer" and alter ego doctrines of the WARN Act.[1]

The defendants filed motions for summary judgment on various grounds including, *inter alia*, the claim that the closing of the Jackson facility and the related termination of plaintiffs' employment were the result of unforseen business circumstances which relieved them of any notice requirements under the WARN Act, pursuant to 29 U.S.C. § 2102(b)(2)(A). In response, the plaintiffs argued that the closure was a foreseeable business circumstance requiring sixty days' advance notice. At oral argument before the district court, the plaintiffs, for the first time, produced a report from their purported expert, who provided his opinion as to whether "the eventual shut down of the MIHI manufacturing facility in Jackson, Michigan [was] foreseeable at least two months prior to January 19, 1996."

The district court explained that the parties agreed that plaintiffs' claims against each of the defendants were dependent upon MIHI's being obligated to provide notice under the WARN Act. Accordingly, it granted summary judgment in favor of all the defendants when it held that the unforeseeable business circumstances exception in § 2102(b)(2)(A) relieved MIHI from any requirement to provide advance notice to plaintiffs concerning the closure of its Jackson facility. Plaintiffs then brought a motion to alter or amend the judgment claiming that the court erred by failing to consider their expert's report, which they argued created a

---

[1] The direct claims against defendants Zybell and Smith were dismissed.

genuine issue of material fact that precluded summary judgment on the basis of § 2102(b)(2)(A).  In denying that motion, the court stated that plaintiffs' expert offered no credible evidence to refute the fact that MIHI was presented with an unforeseeable business circumstance when its primary customer refused to pay and stopped doing business with MIHI.

### Standard of Review

We review *de novo* the district court's grant of summary judgment in favor of the defendants and its subsequent order denying plaintiffs' motion to alter or amend the judgment. *See Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999).  Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### Discussion

The WARN Act ordinarily requires sixty days' advance notice of plant closings or mass layoffs.  *See* 29 U.S.C. § 2102(a).  The purpose of the Act is to extend

> protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1(a).

WARN's sixty-day notice period is reduced or eliminated if the closing is "caused by business circumstances that are not reasonably foreseeable as of the time that notice would have been required."  29 U.S.C. § 2102(b)(2)(A).  This provision, known as the "unforeseeable business circumstances exception," is the focal point of this appeal.

The Department of Labor has promulgated regulations interpreting the "not reasonably foreseeable" language.[2]  "The commentary refuses to classify certain types of circumstances as *per se* unforeseeable and suggests that courts examine each case on its own merits to determine whether the employer in the exercise of 'commercially reasonable business judgment' could have foreseen the particular circumstances that caused

---

[2]The regulations provide:
(b)  The "unforeseeable business circumstances" exception under section 3(b)(2)(A) of WARN applies to plant closings and mass layoffs caused by business circumstances that were not reasonably foreseeable at the time that 60-day notice would have been required.
(1) An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. A principal client's sudden and unexpected termination of a major contract with the employer, a strike at a major supplier of the employer, and an unanticipated and dramatic major economic downturn might each be considered a business circumstance that is not reasonably foreseeable. A government ordered closing of an employment site that occurs without prior notice also may be an unforeseeable business circumstance.
(2) The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services.

20 C.F.R. § 639.9(b).