**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIRGIL DEVERATURDA; BERNARD
SAPITALO; SHIRLEY SAMPAYAN;
MARIA LILLIBETH EDANO,
          *Plaintiffs-Appellants,*

          v.

GLOBE AVIATION SECURITY
SERVICES,
          *Defendant-Appellee.*

No. 04-16633

D.C. No.
CV-03-03887-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted
June 14, 2006—San Francisco, California

Filed July 24, 2006

Before: Pamela Ann Rymer and Thomas G. Nelson,
Circuit Judges, and Samuel P. King,* District Judge.

Opinion by Judge Rymer

---

*The Honorable Samuel P. King, Senior United States District Judge
for the District of Hawaii, sitting by designation.

8169

## COUNSEL

G. Scott Emblidge, Moscone Emblidge & Quadra, San Francisco, California, for the plaintiffs-appellants.

Samuel T. McAdam, Seyfarth Shaw, Sacramento, California, for the defendant-appellee.

**OPINION**

RYMER, Circuit Judge:

This appeal presents the novel question whether the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.*, which prohibits an employer from ordering a mass layoff without giving 60 days' notice, applies to a mass layoff of employees who worked for a private employer as airport security screeners until the United States government federalized airport security services and took over operations at their airport.

Virgil Deveraturda, Bernard Sapitalo, Shirley Sampayan, and Maria Lillibeth Edano (collectively, Deveraturda) were employed by Globe Airport Security Services, Inc. to provide screening services at San Jose International Airport (SJC). However, they and others were let go as a result of the Aviation and Transportation Security Act (ATSA) of 2001. Pub. L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001). Believing that Globe should have given 60 days' notice under the WARN Act, which it did not do, Deveraturda brought a class action for relief under the Act.[1]

The district court granted Globe's motion for judgment on the pleadings, holding that it was the federal government that took over control of airport security without any ability on Globe's part to dictate the nature, scope, or timing of the takeover. As it was the government that ordered the layoff and ousted Globe from providing security personnel at SJC, the court concluded that the WARN Act does not apply. We agree that the Act does not apply, and affirm.

---

[1]If the required notice is not provided, the employer may be liable to affected employees for back pay and benefits for the period of the violation. 29 U.S.C. § 2104(a)(1)(A).

I

Taking the allegations in the complaint to be true, as we must,[2] Deveraturda was a full-time employee of Globe at its head-quarters facility located in San Jose, California. On November 19, 2001, Congress enacted the ATSA and, on February 19, 2002, airport security in the United States was federalized. On August 7, 2002, Globe issued a facsimile memo to its employees informing them how to apply for a position with the Transportation Security Administration (TSA), and, sometime that month, held an informational meeting. Globe informed employees that if they were U.S. citizens, they would be rehired by TSA after undergoing an assessment test administered by TSA. TSA began administering those tests in September 2002. On September 27, Globe issued a memorandum to Airport Terminal C employees announcing that the federal government will "tentatively take over responsibilities for aviation screening services at SJC Airport on October 1, 2002. As of that date aviation screening services employees at SJC Terminal C checkpoints will be relieved of those duties." On September 30, Globe announced the first of a series of four layoffs that occurred between October 1 and January 2003. Deveraturda did not receive 60 days' notice as provided by the WARN Act, and Globe gave no reason for shortened notice. The mass layoffs "were the direct and proximate result of defendant's long known withdrawal from airport security at San Jose International Airport. The terminations were a product of the [ATSA], enacted in 2001, by the federal government to replace private airport security with federal employees, not because of any new or sudden reversal of defendant's prospects or failure to obtain capital or business."

---

[2]*Owners v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) ("A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." (quoting *Nelson v. City of Irvine,* 143 F.3d 1196, 1200 (9th Cir. 1998)).

Globe's answer admits that Deveraturda was employed at its San Jose facility; that he was laid off on November 15, 2002 (Sampayan was laid off on September 30); and that "[t]he layoffs were the result of defendant being notified by the Federal Government (the Transportation Security Administration) on September 27, 2002 that defendant's operations at the San Jose International Airport in San Jose, California were going to be transitioned to the Government, pursuant to federal law, effective October 1, 2002."[3]

Globe filed a motion for judgment on the pleadings on Deveraturda's WARN Act claim on March 22, 2004, which the district court granted, after hearing argument, on May 10. The court acknowledged the dearth of precedent but reasoned from the case it found most analogous, *Buck v. FDIC*, 75 F.3d 1285 (8th Cir. 1996), where employees of a bank taken over by the Federal Deposit Insurance Corporation (FDIC) sued the FDIC for WARN Act violations, that the WARN Act does not apply in the context of government-ordered closures over which the employer has no control. In these circumstances, the court concluded, the layoffs are not effectively ordered by the employer, but by the government.[4]

On May 24, 2004, Deveraturda sought leave to file an amended complaint to allege that Globe had more than 60 days' notice from the federal government of its intention to replace Globe's private airport security with federal employees, and that Globe provided WARN Act notice to employees at other airports in California, but not at SJC. The district court found the additional allegations insufficient to fix the infirmity in the original complaint, and denied the motion.

---

[3]The complaint was filed August 22, 2003. Globe answered November 3, 2003, and brought its motion for judgment on the pleadings on March 22, 2004.

[4]Deveraturda also asserted a claim for failure to pay wages and bonuses under California Labor Code §§ 201 and 203. The district court declined to exercise supplemental jurisdiction over this state law cause of action pursuant to 28 U.S.C. § 1367(c)(3). This is not at issue on appeal.

Deveraturda timely appeals both rulings.

## II

We review a dismissal on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) de novo. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co*., 431 F.3d 353, 360 (9th Cir. 2005); *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). On review of a judgment on the pleadings, "[t]he appellate court must 'accept all material allegations in the complaint as true and construe them in the light most favorable to [the non-moving party].' " *Turner*, 362 F.3d at 1225 (alteration in original) (quoting *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)). "A dismissal may be affirmed 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).

The district court's denial of a motion for leave to amend is reviewed for abuse of discretion. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1100 (9th Cir. 2004); *Bowles v. Reade,* 198 F.3d 752, 757 (9th Cir. 1999). We have held that " '[a] district court does not err in denying leave to amend where the amendment would be futile.' " *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (alteration in original) (quoting *Saul v. United States,* 928 F.2d 829, 843 (9th Cir. 1991)).

## III

This appeal turns entirely on what the WARN Act covers.

Deveraturda focuses on its purpose — to provide "protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of . . . mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective

loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005 (9th Cir. 2004) (citing 20 C.F.R. § 639.1). He argues that it is enough that Globe was his employer, and laid him off without the required notice. He also maintains that there is no blanket "government takeover" exemption, but rather application of the WARN Act depends upon the amount of government control and whether the employer had notice of the takeover. *See Hotel Employees and Restaurant Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 180-82 (3rd Cir. 1999). Further, Deveraturda contends that this case is more analogous to cancellation-of-government-contract cases such as *Halkias v. General Dynamics Corp.*, 137 F.3d 333 (5th Cir. 1998) and *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056 (8th Cir. 1996), where courts have held the employer responsible for violating the WARN Act, than to FDIC-takeover-of-bank cases such as *Buck*.

Like the district court, Globe draws on closures of failed savings and loan institutions where courts have found the WARN Act inapplicable. Globe maintains that cases such as *Buck* indicate that government-ordered takeovers, outside of the control of the employer, are not covered. In its view, this case fits that mold because it is undisputed that the federal government federalized private airport screening; therefore, Globe submits, as a private employer it did not "order" a mass layoff of screening personnel and so is not subject to the WARN Act.

**[1]** We start with the statutory language:

> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order —
>
> (1) to each representative of the affected employees as of the time of the notice or, if there is no such rep-

resentative at that time, to each affected employee; and

(2) to the State or entity designated by the State to carry out rapid response activities under section 2864(a)(2)(A) of this title, and the chief elected official of the unit of local government within which such closing or layoff is to occur.

29 U.S.C. § 2102(a). "Where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Cleveland v. City of Los Angeles*, 420 F.3d 981, 989 (9th Cir. 2005) (internal quotation marks and citation omitted). We believe the language of the WARN Act is straightforward; it unambiguously provides that the Act applies when an *employer* orders a mass layoff. There is no question here that the layoffs were the result of the *federal government*'s replacing private screeners with federal employees. The ATSA, enacted in the wake of 9/11, provides that "[t]he Under Secretary of Transportation for Security shall provide for the screening of all passengers and property," and that "[a]ll screening of passengers and property at airports in the United States where screening is required under this section shall be supervised by uniformed Federal personnel of the Transportation Security Administration who shall have the power to order the dismissal of any individual performing such screening." 49 U.S.C. § 44901(a), (b). The TSA gave tests in September for screening personnel at SJC, and took over responsibility for aviation screening services at SJC Terminal C beginning October 1, 2002. Thus it was the government, not Globe, that ordered Globe's employees out of work at SJC Terminal C. This being so, the WARN Act does not apply.

Deveraturda argues that this decision cannot be made without considering the facts surrounding transfer of control from Globe to the government. He points out that this is what the Third Circuit did in *Hotel Employees*. In that case, the New

Jersey Casino Control Commission closed a gambling casino for which the employees who brought suit had worked. Elsinore Shore Associates, which owned the Atlantis Hotel and Casino, had been in financial trouble since the 1980's and for this reason, its license had been conditioned in 1988 on maintaining an adequate cash and capital position. To make a long story short, it was unable to do so, the Commission's patience ran out in the spring of 1989, a possible sale collapsed, and the Commission on May 16 ordered the Atlantis to close effective May 22, 1989. After that, Elsinore Shore informed its employees of the closing and elimination of their jobs. Although the majority recognized that the language of the WARN Act could suggest that only employer-ordered closings may be subject to the Act, it found the statute silent on the subject of government-ordered closings or situations where both the government and the employer play a role in the closing. Accordingly, the court went on to consider Congress's purpose as well as Department of Labor regulations implementing the Act, from which it identified two factors that inform an employer's responsibilities: the amount of government involvement in the closing, and the amount of notice the employer had of that involvement. *Hotel Employees,* 173 F.3d at 182-83. Ultimately the court concluded that the "unforeseeable business circumstances" exception[5] applied.

---

[5]The Act provides that the 60-day notice period is reduced where the "mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). The regulations, in turn, describe an "important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1). Section 639.9(b)(1) indicates that "[a] government ordered closing of an employment site that occurs without prior notice also may be an unforeseeable business circumstance." The "unforseeable business circumstances" exception is not at issue here, however, because the complaint alleges that "[t]he mass layoffs did not result from any sudden failure or reversal of defendant's financial prospectus" or "because of any new or sudden reversal of defendant's prospects or failure to obtain capital or business."

Then-Judge Alito, on the other hand, thought that the language of the Act was plain and applied only when an "employer" orders the closing. *Id.* at 187 (Alito, J., concurring). He saw no need to go further as the closing order for the Atlantis was clear, unequivocal, and unconditional.

**[2]** We agree with Judge Alito's analysis. We see no reason to go further than the face of the statute but even if we did, there is no dispute here that the government involvement was absolute. Unlike Elsinore Shore, Globe had nothing to do with the conditions that brought the layoffs about. Nor could it do anything to remedy them. By the same token, Globe's continuing provision of aviation screening services was not conditional upon anything that it could, or could not do. Beyond this, as the pleadings indicate, it was apparent to everyone as of November 19, 2001 — when the ATSA was enacted — and as of February 19, 2002 — when airport security was federalized — that the government, not Globe, would be providing personnel for airport screening.

**[3]** While there is no authority directly on point, the unilateral and absolute nature of the order to federalize airport security is far closer to takeover of a bank than to closure of a casino. *Buck* is the leading case on whether the WARN Act applies when a bank is taken over by the FDIC. There, the FDIC organized a "bridge bank" to purchase the assets and assume the liabilities of two failed banks and then sold the assets of the bridge bank to a successor bank. The bridge bank retained the employees of the two failed banks, but after the FDIC sold the bridge bank, the acquiring bank offered employment to only 400 of the 626 employees of the bridge bank. Buck argued that the FDIC, which owned the bridge bank, acted as an employer in letting these employees go and thus had to comply with the WARN Act. The court rejected this argument, noting that the WARN Act would not have applied if the FDIC had simply liquidated the banks, so Congress must have intended for the FDIC to be able to take the less drastic action of creating a bridge bank and terminating

less than half the work force five months later without incurring WARN Act liability. *Buck*, 75 F.3d at 1290 (explaining that to require the FDIC to comply with the WARN Act under the circumstances "could severely hinder the FDIC's ability to resolve bank failures as efficiently and expeditiously as it did here"). The court also noted the view of Senator Metzenbaum, the sponsor of the WARN Act, that "when the appropriate banking agency moves in to close a bank, the closing is by the Federal Government, not by the employer itself. . . . The bill on its face simply does not apply." *Id*. at 1291 (quoting 134 Cong. Rec. S8,614-03, S16,047 (1988)) (emphasis removed). Finally, the court observed that the closing at issue was absolute, in that the Board of Directors and management of the bridge bank were effectively ousted from control upon sale of its assets. Federalizing airport security and taking over screening operations at SJC Terminal C is analogous. Although Globe was certainly the employer that executed the mass layoff, it did so as a result of the federally-ordered takeover that replaced private employees with federal employees. Nothing in the pleadings suggests that the government's takeover of screening operations at SJC Terminal C did not effectively oust Globe from providing screening personnel at that terminal. As TSA moved in to assume that responsibility, Globe had to move out. Just as *Buck* concluded that the WARN Act did not apply to the bridge bank, we conclude that on its face, the Act does not apply to Globe because the mass layoff was ordered by the federal government, not by the employer itself.[6]

**[4]** Deveraturda submits that this case is distinguishable because he is suing a private employer — not the FDIC as owner, operator or regulator — and because Globe was the

---

[6]*See Office and Prof'l Employees Int'l Union Local 2, AFL-CIO v. FDIC*, 138 F.R.D. 325, 327 (D.D.C. 1991) (holding that the WARN Act did not apply to the FDIC in its capacity as receiver of a closed bank because the federal government is not an employer when it is taking over and shutting down a bank).

entity that laid off the employees. Of course, Globe was the employer, but Globe let its screening personnel go only as a result of the federally-ordered takeover. The critical inquiry is not what entity employed the affected employees at the time of the layoff; rather, it is who ordered the layoff to occur.

Deveraturda further suggests that the fact that Globe did not lay off all its screening employees on a single day when the government closed its doors, but rather in a series of layoffs to ease TSA's transition, undermines the district court's assumption that Globe had no control over the manner or timing of the layoffs. However, as we have explained, application of the Act turns on whether the layoffs were government-ordered. That TSA may have completed its testing and decided whom *it* wanted to employ in stages (the complaint indicates, for example, that when TSA started testing in September 2002, it assessed non-screeners first) does not affect this conclusion. Nor are we persuaded by Deveraturda's argument in reply that Globe apparently continues to employ workers at the airport; the pleadings leave no doubt that Globe's responsibility for aviation *screening* services was at an end once TSA took over.

Finally, Deveraturda points out that courts have applied the Act when the government cancels a contract that is the cause of a mass layoff. *See Halkias*, 137 F.3d at 335-36; *Loehrer*, 98 F.3d at 1060-62. While true, both cases involved the "unforeseeable business circumstances" defense, not the question whether the Act applies in the first place. More importantly, neither involved an absolute government takeover of the employer's business resulting in government-ordered replacement of private employees with government employees.

[5] We conclude from the language of the WARN Act that it plainly does not apply to a government-ordered mass layoff. As Deveraturda was laid off as a result of the federalization of airport security and assumption by the government of responsibility for aviation screening services at SJC Terminal

C, he has no claim against Globe for failing to give 60 days' notice under the WARN Act. We therefore affirm the district court's judgment in favor of Globe.

## IV

Given that the WARN Act does not apply because the government federalized airport security and ordered the layoff, the proffered amendment would be futile. *Thinket Ink Info Res.*, 368 F.3d at 1061. Accordingly, the district court did not err in denying leave to amend.

AFFIRMED.