**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-6833

UNITED STATES OF AMERICA,

Petitioner − Appellee,

v.

EDGAR SEARCY,

Respondent – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:15-hc-02292-FL)

Argued: October 25, 2017                                    Decided: January 18, 2018

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the majority opinion, in which Judge Harris joined. Judge Thacker wrote an opinion concurring in the judgment.

**ARGUED:** Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Michael Gordon James, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. John Stuart Bruce, United States Attorney, G. Norman Acker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIAZ, Circuit Judge:

Edgar Joe Searcy appeals his civil commitment under the Adam Walsh Act, 18 U.S.C. § 4248. He does not challenge the factual findings of the district court, but rather urges us to hold that the government initiated this civil commitment proceeding after the applicable statute of limitations had lapsed. Searcy argues that the four-year "catch-all" statute of limitations Congress enacted for civil actions, *see* 28 U.S.C. § 1658(a), applies to civil commitment proceedings under the Adam Walsh Act. Thus, says Searcy, by not filing a certification until more than a decade after his incarceration and more than eight years after the passage of the Adam Walsh Act, the government initiated civil commitment proceedings too late. But, as we explain, 28 U.S.C. § 1658(a) doesn't apply to civil commitment under the Adam Walsh Act. We therefore affirm the district court's judgment.

I.

Edgar Joe Searcy was convicted for using interstate commerce to engage in a sexual activity with a minor, in violation of 18 U.S.C. § 2422(b). On December 4, 2003, the district court sentenced him to a term of 180 months imprisonment followed by a three-year term of supervised release. Searcy was scheduled to be discharged from prison on June 25, 2016.

While Searcy was incarcerated, Congress passed the Adam Walsh Child Protection and Safety Act. *See* Pub. L. No. 109-248, 120 Stat 587. Among other things, the Act provides a mechanism for civil commitment of individuals in federal custody who are deemed to be sexually dangerous persons. 18 U.S.C. § 4248. On December 4, 2015, as

2

the end of Searcy's sentence approached, the Bureau of Prisons certified Searcy as a sexually dangerous person and petitioned to have him civilly committed pursuant to the Act. The certification was based in part on Searcy's current conviction, as well as prior state convictions in Florida and Kansas for sexual activity with a child; performing a lewd, lascivious, or indecent act upon a child under the age of sixteen; and exploitation of a child.

As part of the certification process, the Bureau of Prisons conducted a psychological review and assessment of Searcy, which indicated diagnoses of pedophilic disorder, otherwise specified personality disorder with antisocial and narcissistic features, and moderate alcohol use disorder. The Bureau also performed a risk assessment of Searcy and concluded that based on "his prior offense conduct, sexual preoccupation, deviant sexual interest, offense-supportive attitude, lack of emotionally intimate relationships with adults, lifestyle impulsiveness, poor problem solving skills, resistance to rules and supervision, grievance/hostility and negative social influences," Searcy would have "serious difficulty refraining from sexually violent conduct or child molestation if released." J.A. 17–18.

Searcy moved to dismiss the civil commitment proceeding, arguing, among other things, that the four-year catch-all statute of limitations in 28 U.S.C. § 1658(a) required the government to commence civil commitment proceedings against him within four years after the enactment of the Adam Walsh Act. Generally speaking, § 1658(a) provides a four-year statute of limitations for federal civil actions where Congress has not specified one. Congress passed the Adam Walsh Act while Searcy was incarcerated, so Searcy argued that the four-year clock began to run with the passage of the Act.

3

The district court denied the motion, holding that § 1658(a) "does not apply to respondent's § 4248 proceeding" because the proceeding "is governed by the provisions of 18 U.S.C. § 4248," under which "[t]he sole statutory precondition . . . is that [Searcy] be in the custody of [the Bureau of Prisons], be civilly committed as mentally incompetent to stand trial under 18 U.S.C. § 4241(d), or have had all criminal charges against him dismissed solely for reasons relating to his mental condition." J.A. 120. The district court also noted that because the civil commitment inquiry is "primarily prospective, respondent's argument that evidence became 'stale,' was 'lost,' or 'watered down' prior to his certification is without merit." *Id.* (internal citation omitted).

The district court conducted a two-day hearing in which Searcy represented himself. The court heard testimony from four psychiatric experts, all of whom testified that Searcy satisfied the criteria for civil commitment. At the conclusion of the hearing, the district court found Searcy to be a sexually dangerous person and entered a judgment committing him to the custody and care of the Attorney General "until such time that he is no longer a sexually dangerous person." J.A. 495. This appeal followed.

## II.

We are called upon to consider the relationship between two statutes: the civil commitment provisions of the Adam Walsh Act, 18 U.S.C. § 4248, and the four-year catch-all statute of limitations, 28 U.S.C. § 1658(a). To understand how these statutes interact, we begin with an overview of each.

### A.

4

Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 to "protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub. L. No. 109-248, 120 Stat 587. Among other things, the Act established new sex-offender registry and notification requirements; enhanced certain criminal laws relating to sexual and violent crimes against children; and, relevant to this case, established a procedure for federal civil commitment of dangerous sex offenders. *Id.*

Existing federal legislation provides for civil commitment of individuals in federal custody who, for example, "suffer[] from a mental disease or defect" and for whom release "would create a substantial risk of bodily injury to another person or serious damage to property of another." *See* 18 U.S.C. § 4246(a). Additionally, a number of states have enacted laws "that seek to protect the public from mentally abnormal, sexually dangerous individuals through civil commitment or other mandatory treatment programs" for persons in state custody. *See Kansas v. Hendricks*, 521 U.S. 346, 388–89 (1997) (Breyer, J., dissenting) (collecting statutes). The Adam Walsh Act established a federal civil commitment procedure specifically focused on individuals deemed to be sexually dangerous.

Civil commitment under the Act applies to persons who are in the custody of the Bureau of Prisons, who are committed to the custody of the Attorney General pursuant to

18 U.S.C. § 4241(d),[1] or who have had criminal charges dropped solely because of their mental condition.  18 U.S.C. § 4248(a).  To initiate civil commitment proceedings, the Attorney General or an authorized individual must file a certificate in the district court where the person is confined certifying that the person is sexually dangerous.  *Id.*  A sexually dangerous person is one who "has engaged or attempted to engage in sexually violent conduct or child molestation" and who "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released."  18 U.S.C. § 4247(a)(5)–(6).

Upon the filing of a certificate, the district court holds a hearing at which the individual asserted to be sexually dangerous has the right to counsel (appointed by the court if he cannot afford a lawyer), and the opportunity "to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing."  18 U.S.C. § 4247(d).  The court must be satisfied by clear and convincing evidence that the person is sexually dangerous.  18 U.S.C. § 4248(d).  If the court so finds, the person is committed to the custody of the state where he was domiciled or tried, or to the custody of the Attorney General.  *Id.*

---

[1]  18 U.S.C. § 4241(d) allows for the civil commitment of a criminal defendant who suffers "from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

6

Once a person has been civilly committed, the Act provides procedures for reevaluation and possible release.  The director of the facility where a person is civilly committed must prepare annual reports "concerning the mental condition of the person and containing recommendations concerning the need for his continued commitment" and submit those reports to the district court.  18 U.S.C. § 4247(e)(B).  A civilly committed person may also (through counsel or a guardian) petition the court every 180 days for a hearing to determine whether he should be discharged.  *See* 18 U.S.C. § 4247(h).  If the district court determines by a preponderance of the evidence that a civilly committed person will no longer be sexually dangerous to others if released (either unconditionally or with a prescribed regimen of medical, psychiatric, or psychological care or treatment), then the person may be discharged.  18 U.S.C. § 4248(e).  A person may also challenge his civil commitment collaterally through habeas corpus proceedings.  *See* 18 U.S.C. § 4247 (g).

B.

28 U.S.C. § 1658(a) addresses the time limits for bringing certain claims in federal court.  Before the passage of the statute, federal courts hearing civil cases routinely engaged in the practice of "limitations borrowing."  This meant that when Congress failed to specify a statute of limitations in a federal law, "the settled practice [was] to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so." *See Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 377 (2004) (alterations in original) (internal quotation marks omitted).

This patchwork practice proved problematic: it "generated a host of issues that required resolution on a statute-by-statute basis," and created difficult questions for courts.

7

*Id.* at 378. Under the limitation-borrowing regime, judges were confronted with the "frequently present problem of a conflict of laws in determining which State statute [was] controlling, the law of the forum or that of the situs of the injury." *Id.* (alteration in original) (quoting S. Rep. No. 619, at 4–6 (1955)). Limitations borrowing "obligate[d] judges and lawyers to determine the most analogous state law claim; it impose[d] uncertainty on litigants; [and] reliance on varying state laws result[ed] in undesirable variance among the federal courts and disrupt[ed] the development of federal doctrine on the suspension of limitation periods." *Berger v. AXA Network LLC*, 459 F.3d 804, 808 n.4 (7th Cir. 2006) (quoting H.R. Rep. No. 101-734, at 24 (1990)). These issues did "much to consume the time and energies of judges but . . . little to advance the cause of justice," and a "growing number of commentators and courts . . . called upon Congress to . . . enact[] federal limitations periods for all federal causes of action." *Sentry Corp. v. Harris*, 802 F.2d 229, 246 (7th Cir. 1986).

Congress listened. In response, it enacted 28 U.S.C. § 1658 as part of the Judicial Improvements Act of 1990. Pub. L. No. 101-650, 104 Stat 5089. Section 1658(a) aimed to "minimize the occasion for th[e] practice" of limitations borrowing by providing a "uniform federal statute of limitations." *R.R. Donnelley*, 541 U.S. at 380. Section 1658(a) "supplies a general, 4-year limitations period for any federal statute subsequently enacted without one of its own." *North Star Street Co. v. Thomas*, 515 U.S. 29, 34 n. (1995).

Courts now apply the catch-all statute of limitations when a new federal cause of action is silent. *See, e.g.*, *Baldwin v. City of Greensboro*, 714 F.3d 828 (4th Cir. 2013) (applying § 1658 to claim arising under Uniformed Services Employment and

8

Reemployment Rights Act of 1994). The catch-all statute has—at least with regard to statutes enacted after 1990—displaced the need for courts to engage in limitations borrowing, and relieved the judicial headache that came with it.

## III.

With this background in mind, we proceed to the question at hand: does the catch-all statute of limitations apply to limit the time in which the government must initiate civil commitment proceedings under the Adam Walsh Act? Searcy contends that it does; the district court thought otherwise. We review de novo the legal conclusions in a district court's order granting or denying civil commitment under the Adam Walsh Act. *United States v. Perez*, 752 F.3d 398, 404 (4th Cir. 2014).

"As in all cases of statutory interpretation, our inquiry begins with the text . . . ." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cty.*, 401 F.3d 274, 279 (4th Cir. 2005). 28 U.S.C. § 1658(a) provides, in pertinent part, that: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." In not many words, that rule contains several important qualifiers and terms that govern its application.

There is no doubt that the Adam Walsh Act, enacted in 2006, is an "Act of Congress enacted after the date of the enactment of this section." (Congress enacted 28 U.S.C. § 1658 in 1990 and amended it in 2002.) But § 1658(a) requires us to answer two more questions before we can decide whether it applies to the Adam Walsh Act. First, because

§ 1658(a) applies "[e]xcept as otherwise provided by law," does some other law preclude application of § 1658(a) to the Adam Walsh Act? Second, is civil commitment under the Adam Walsh Act a "civil action?" We turn to these questions.

A.

Section 1658(a) begins with an important limiting phrase: "Except as otherwise provided by law . . . ." This means that if some other law provides a statute of limitations for the action, the catch-all statute does not apply. In most cases, this will be because the statute at issue sets forth in its text an explicit timeframe in which a party must commence an action. The text of the Adam Walsh Act doesn't include a conventional statute of limitations using specific units of time (two years, say, or six months). But the Act isn't silent about when a civil commitment proceeding must be brought. To the contrary, it imposes an important temporal limitation on civil commitment proceedings: the government may only seek to certify someone as a sexually dangerous person if the person is (1) in the custody of the Bureau of Prisons, (2) committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d), or (3) someone against whom all criminal charges have been dismissed solely for reasons relating to mental health. 18 U.S.C. § 4248(a).[2]

Thus, civil commitment is not some indefinite threat unmoored in time. The statute imposes a clear start and end point during which the government must initiate civil

---

[2] Because Searcy was in the custody of the Bureau of Prisons at the time the government initiated civil commitment proceedings, we focus on that prong. Each of the conditions under § 4248 requires some sort of government control or custody over the person it seeks to commit, so we see no substantive analytical distinction.

10

commitment proceedings: the period of time in which that person is in custody of the federal government. Because this rule anchors civil commitment proceedings to a discrete duration of time, no additional statute of limitations is required.

Section 1658(a) is designed to assist courts when Congress enacts a statute that lacks clarity or order regarding the timing of its application. Civil commitment under the Adam Walsh Act, on the other hand, is a mechanism with a detailed and carefully crafted procedure. Accordingly, we have recognized elsewhere that the procedures codified in the civil commitment statute can result in the displacement of ordinary rules.

In *Perez* for example, we held that the procedure set forth in the Adam Walsh Act for initiating civil commitment proceedings "supplants the summons requirement set forth in [Fed. R. Civ. P.] 4." 752 F.3d at 405. In deciding that case, we looked to the "primary functions" served by Rule 4—providing formal notice and establishing personal jurisdiction—and concluded that neither was impaired by the initiation process set forth in the statute. *Id.* at 405-07. Here, too, a review of the primary functions of statutes of limitations makes clear that the time restriction contained in the Adam Walsh Act (the duration of the person's time in custody) supplants or displaces the need for a conventional statute of limitations.

"Statutes of limitations are designed to insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring in part and dissenting in part). Civil commitment proceedings implicate none of these concerns. This is due to

11

the fact that nearly all ordinary litigation is backward-looking (that is, it seeks to determine liability based on past events), whereas a civil commitment proceeding focuses primarily on the present and future. Its central concern is not whether the person may have been a danger in the past; but rather, whether the person, if released, *will* (by virtue of his mental state) pose a threat to society. *See United States v. Carta*, 592 F.3d 34, 42 (1st Cir. 2010) (civil commitment requires proof of "future dangerousness"); J.A. 115 (describing the civil commitment question as consisting of a "retrospective inquiry" (which can be satisfied by proof of prior conviction), a "present inquiry," and a "prospective inquiry").

It's no surprise then that witnesses at a civil commitment hearing are typically psychiatric experts who have evaluated the individual and can speak to his present mental state. (That was the case here, where four psychiatrists testified at the hearing as to Searcy's likely future dangerousness.) In such a circumstance, there's little risk that a relevant witness or probative evidence will no longer be available due to the passage of time.

As the district court explained, "because the inquiry at [Searcy's] § 4248 hearing is primarily prospective, [Searcy's] argument that evidence became stale, was lost, or watered down prior to his certification is without merit." J.A. 120 (internal citation and quotation marks omitted). And while it's true that in some cases the retrospective inquiry of a civil commitment proceeding may rely on convictions that are quite old, the Supreme Court has repeatedly recognized that "[p]revious instances of violent behavior are an important indicator of future violent tendencies" and that "from a legal point of view there is nothing

inherently unattainable about a prediction of future criminal conduct." *See Hendricks*, 521 U.S. at 358 (1997) (alteration in original) (internal quotation marks omitted).

In any event, Searcy's proposed solution would not remedy his concern about timeliness, since many inmates (like Searcy) will have prior convictions that significantly predate the person's entry into federal custody. Moving the civil commitment hearing earlier in a prisoner's sentence would do little to lessen the concern related to older convictions, because the amount of time between the prior conviction and the entry into federal custody is inherently arbitrary.[3] And to the extent Searcy wishes to challenge the facts supporting those convictions, the civil commitment proceeding is not the appropriate forum. Instead, Searcy must pursue those challenges through the usual channels of appellate, postconviction, and habeas review.

To sum up, the statutory requirement that a civil commitment proceeding be initiated against a person while he is in federal custody amounts to a de facto statute of limitations that provides the same finality and certainty as a conventional limitation without implicating the concerns that arise from statutes totally silent as to timing. Put another way, 28 U.S.C. § 1658(a) is a gap-filling rule, and the Adam Walsh Act leaves no gap to be filled. For these reasons, we hold that the timing of a civil commitment proceeding is

---

[3] We also note that assessing sexual dangerousness at the beginning of a period of incarceration would make little practical sense. The statute itself requires annual reporting and provides for reconsideration of the status of civilly committed persons every 180 days, *see* 18 U.S.C. § 4247(e), (h), which suggests that Congress believed these determinations were useful only for that amount of time. Beginning these evaluations at the start of incarceration—often many years before release—would be inefficient.

13

"otherwise provided by law," specifically, the custody requirement of the civil commitment statute, and thus the catch-all statute of limitations in 28 U.S.C. § 1658(a) does not apply.

B.

The remainder of § 1658(a) provides further support for our conclusion. Section 1658(a) applies by its terms to only "civil actions." We must ask, then, whether a civil commitment proceeding is a "civil action" as that term is used in § 1658(a). To be sure, commitment under the Adam Walsh Act is civil, rather than criminal, in nature. *See Addington v. Texas*, 441 U.S. 418, 428 (1979) ("In a civil commitment state power is not exercised in a punitive sense . . . a civil commitment proceeding can in no sense be equated to a criminal prosecution."). Indeed, courts in our circuit have specifically referred to civil commitment actions as civil proceedings. *See, e.g.*, *United States v. Edwards*, 777 F. Supp. 2d 985, 997 (E.D.N.C. 2011) (describing Adam Walsh civil commitment actions as "civil proceedings that can nonetheless result in prolonged government custody").

Nevertheless, we are satisfied that a civil commitment proceeding is not the sort of "civil action" Congress had in mind when it enacted § 1658(a). A civil action is one "brought to enforce, redress, or protect a private or civil right; a noncriminal action." Black's Law Dictionary 36 (10th ed. 2009). When the government brings a civil commitment action, it does not seek to enforce or protect a private civil right. Instead, civil commitment is a "reasonably adapted and narrowly tailored means of pursuing the Government's legitimate interest as a federal custodian in the responsible administration of its prison system." *United States v. Comstock*, 560 U.S. 126, 128 (2010) (finding federal civil commitment within "necessary and proper" power of Congress). This function of

14

"responsible administration" is quite apart from the traditional concept of a civil action, in which one party typically seeks redress for an injury from another.

We find further evidence for our conclusion in the statute's subsequent use of the term "cause of action." (Section 1658(a) requires that a civil action be commenced no later than "4 years after the cause of action accrues.") A "cause of action" is defined as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." Black's Law Dictionary 266–67 (10th ed. 2009). But in the civil commitment context, the Attorney General or an authorized person certifies to a district court that a person is sexually dangerous, and then the court conducts a hearing to determine whether that is so. *See* 18 U.S.C. § 4248(a). In this way, a civil commitment proceeding is different from a traditional adversarial action between parties. Rather than asking the court to right a wrong between litigants, the government is exercising its constitutional power to civilly commit an individual for the protection of the public at large. *See Comstock*, 560 U.S. at 142–43. Interposing the court into that process ensures that principles of fairness and due process are complied with along the way.

Civil commitment is unique in other ways that do not align with everyday civil actions. For example, Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is commenced by filing a complaint with the court." But a civil commitment proceeding is initiated by the filing of a certification that an individual is sexually dangerous. And in *Perez*, although we acknowledged that § 4248 commitment proceedings are "civil and not criminal in nature," and thus "broadly speaking, the Federal

15

Rules of Civil Procedure would apply," we held, as discussed above, that those rules could nevertheless be "displaced by specific procedural provisions" in the Adam Walsh Act. 752 F.3d at 404; *see also id.* at 405 (characterizing civil commitment proceedings as a "streamlined procedure" and a "unique context").

In other contexts, too, civil commitment proceedings are simply not like other civil actions. The U.S. District Court for the Eastern District of North Carolina has acknowledged the "compelling liberty interest in avoiding civil commitment and post-certification detention" and consequently held that the *Brady* rule[4] applies in § 4248 proceedings. *United States v. Edwards*, 777 F. Supp. 2d 985, 990, 998 (E.D.N.C. 2011). There, the district court held that "the normal rules and customs governing civil procedure in the federal courts are inadequate to protect the fundamental liberty interests at stake" in a § 4248 proceeding. *Id.* at 991–92. "Ordinary rules of civil procedure are inadequate here because civil commitment hearings are not an ordinary civil matter." *Id.* at 994.

Indeed, the statutory procedures for a civil commitment hearing differ substantially from those that apply to a run-of-the-mill civil case in that they afford individuals rights traditionally associated with criminal proceedings, including the right to appointed counsel, the right to confront witnesses, and a heightened burden of proof. *See* 18 U.S.C. § 4247(d) (right to counsel, confrontation right); 18 U.S.C. § 4248(d) (proof by clear and convincing evidence). Additionally, the detention of persons civilly committed under the Adam Walsh

---

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

16

Act is subject to perpetual semiannual review, and may also be attacked collaterally through a habeas corpus action. *See* 18 U.S.C. § 4247(g)–(h).

In short, because we agree that "civil commitment hearings are not an ordinary civil matter," *Edwards*, 777 F. Supp. 2d at 994, we conclude that a civil commitment hearing under the Adam Walsh Act was not a "civil action" as that term is used in § 1658(a), thus the catch-all statute of limitations is inapplicable in the civil commitment context.[5]

## IV.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*

---

[5] Since we hold that the catch-all statute of limitations does not apply to Adam Walsh Act civil commitment proceedings, we need not decide when that cause of action "accrues." We note only that the traditional concept of "accrual" is incongruous with an inherently forward-looking inquiry like Adam Walsh civil commitment. Divining the moment when a person acquires the quality of future dangerousness is a nonsensical riddle that judges need not solve. The illogic of the question bolsters our conclusion that the catch-all statute of limitations is incompatible with the Adam Walsh Act.

THACKER, Circuit Judge, concurring:

I agree with the majority's conclusion that 28 U.S.C. § 1658(a)'s four year limitations period does not apply to 18 U.S.C. § 4248's civil commitment proceedings. Therefore, I concur in the judgment. However, I pursue a different route to reach this conclusion.

In my view, § 4248 civil commitment proceedings are "civil actions" under § 1658(a); but, application of the four year limitations period in the circumstance of this case would lead to an absurd result. Thus, I reject application of the four year limitations period to § 4248 civil commitment proceedings.

I.

A.

I first address the Government's argument that § 4248 civil commitment proceedings are not "civil actions" and thus not subject to § 1658(a)'s four year limitations period. Any statutory analysis necessarily begins with the plain language of the statute. "[W]hen the statute's language is plain, the sole function of the courts [--] *at least where the disposition required by the text is not absurd* [--] is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (emphasis supplied) (internal quotation marks omitted).

Section 1658(a) states: "Except as otherwise provided by law, a civil action arising under an Act of Congress . . . may not be commenced later than [four] years after the cause of action accrues." 28 U.S.C. § 1658(a). Because the term "civil action" is undefined in

18

the statute, we afford the term its ordinary meaning. *See People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 861 F.3d 502, 509 (4th Cir. 2017).

Black's Law Dictionary defines "civil action" by cross reference to "action." *See Civil Action*, Black's Law Dictionary (10th ed. 2014). It defines "action" broadly as:

> A civil or criminal judicial proceeding.
>
> "An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress *or prevention of a wrong*, or the punishment of a public offense. *But in some sense this definition is equally applicable to special proceedings*. More accurately, it is defined to be *any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree*. The action is said to terminate at judgment." 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885).

*Action*, Black's Law Dictionary (10th ed. 2014) (emphasis supplied). "Actions" include special proceedings. Surely, by their very nature, civil commitment proceedings must be considered special proceedings. *See Addington v. Texas*, 441 U.S. 418, 425 (1979) (recognizing that civil commitment constitutes a significant deprivation of liberty); *United States v. Perez*, 752 F.3d 398, 405 (4th Cir. 2014) (acknowledging that the "unique" nature of civil commitment proceedings may render some of the Federal Rules of Civil Procedure unnecessary). "Actions" also include "judicial proceedings" resulting in a judgment. Undoubtedly, civil commitment proceedings are "judicial proceedings" resulting in a judgment. *See* 18 U.S.C. § 4248(d) ("If, after the hearing, the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General.").

19

Furthermore, we have already concluded that § 4248 civil commitment proceedings are of the "civil" variety. In *United States v. Perez*, 752 F.3d 398, 404 (4th Cir. 2014), we determined that a § 4248 civil commitment hearing is a "civil action" or "proceeding" subject to the Federal Rules of Civil Procedure unless "displaced by specific procedural provisions." *See also* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ." (emphasis supplied)). This court has also described the civil commitment hearing as "civil in nature" where "procedural due process . . . guarantee[s] certain protections." *United States v. Wood*, 741 F.3d 417, 423 (4th Cir. 2013); *see also United States v. Timms*, 664 F.3d 436, 455–56 (4th Cir. 2012) (affirming the district court's conclusion that § 4248 creates civil -- not criminal -- proceedings).

Moreover, the Supreme Court has broadly recognized that the word "proceedings" may refer to either criminal actions or civil actions. *See Kansas v. Hendricks*, 521 U.S. 346, 361–62 (1997) ("The categorization of a particular proceeding as civil or criminal is . . . a question of statutory construction." (internal quotations omitted)). And, the Supreme Court has declared: "a civil commitment proceeding can in no sense be equated to a criminal prosecution." *Addington*, 441 U.S. at 428. What else then could such a proceeding be? Because § 4248 civil commitment proceedings "can in no sense be equated to a criminal prosecution," § 4248 civil commitment proceedings logically must be "civil actions." *Id.*

20

B.

Although I readily conclude that § 4248 civil commitment proceedings are "civil actions," it is equally clear to me that applying § 1658(a)'s four year limitations period to such proceedings would lead to absurd results. Accordingly, I also conclude that § 1658(a) does not apply to § 4248 civil commitment proceedings. *See Hartford Underwriters*, 530 U.S. at 6.

1.

If § 1658(a)'s four year limitations period applied to civil commitment proceedings, accrual of such limitations period would occur in most cases on the date of sentencing -- when the government quite likely has sufficient information to suspect a person is sexually dangerous. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) ("Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."). This accrual point highlights the absurdity here. *See also ante* at 17 n.5. Normally, a statute of limitations requires a past act, event, or harm to trip the limitations clock. *See Statute of Limitations*, Black's Law Dictionary (10th ed. 2014) (defining a statute of limitations as "a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)"). In civil commitments, however, there is no corresponding past act, event, or harm by which to mark accrual. Instead, the limitations period would run from the time of reasonable suspicion of *future* harm. This is inconsistent with other statutes of limitations.

21

2.

In a civil commitment proceeding, the district court must find that the individual *currently* "*suffers* from a serious mental illness, abnormality, or disorder" and "as a result of" that mental condition, the individual "would have serious difficulty in refraining from sexually violent conduct or child molestation *if released*." 18 U.S.C. § 4247(a)(5)–(6) (emphasis supplied); *see United States v. Wooden*, 693 F.3d 440, 460 (4th Cir. 2012) ("Determining whether an inmate will have serious difficulty refraining from re-offending requires the court to 'evaluate[ ] the individual's present mental condition and the likely prospective effect of that mental condition on his volitional control.'" (quoting *United States v. Francis*, 686 F.3d 265, 275 (4th Cir. 2012))). Thus, the district court must make present and prospective findings: the individual's *current* mental state and *future* risk upon release. But, the district court's factual findings of present mental condition and future sexual dangerousness, especially if made well before the scheduled release date, could become stale and inapplicable by the time of scheduled release. Thus, a determination of future risk would be highly speculative. Such determination would assume that the individual would still suffer from the mental disorder at the time of scheduled release -- which could be years in the future.

3.

Additionally, the district court's decision concerning commitment would not account for any rehabilitative efforts or material changes occurring between commitment and scheduled release. As a result, applying a four year limitations period would be detrimental to those individuals with sentences longer than four years who become

22

rehabilitated after the four year deadline. Simply put, the district court's decision would be premature.

Given the significant liberty interest at stake, all rehabilitative efforts or material changes occurring prior to scheduled release should be considered before making a commitment determination. A more developed factual record would only serve to enhance fairness and improve the accuracy of the district court's factual findings on the current mental state and the future risk of dangerousness. Applying a four year limitations period would cut the evidentiary record short and force the district court to make speculative, premature findings.

Moreover, such a premature determination would undermine the criminal justice system's purpose of rehabilitation. *See Kelly v. Robinson*, 479 U.S. 36, 52 (1986). Particularly, by precluding the district court from considering any rehabilitative efforts undertaken between commitment and scheduled release, the four year limitations period would discount the notion that offenders can be rehabilitated through imprisonment. In order to promote the rehabilitative purpose of the criminal justice system, district courts should consider an individual's full account of rehabilitation, not just four years' worth.

4.

The most blatant absurdity is also the most impactful, that is, there is no reason to civilly commit an individual who is already in custody and who will remain in custody for a significant period. Section 4248's civil commitment scheme is designed to protect the public from a *present* threat of harm. *See Matherly v. Andrews*, 817 F.3d 115, 119 (4th Cir. 2016). Where a sexually dangerous person's release is far in the future, by definition,

23

that individual cannot pose a *present* risk to the community. Thus, in many circumstances, applying a four year limitations period to § 4248 civil commitment proceedings would require the commitment of those not "nearer to release." *Id.* As a result, application of the four year limitations period would run counter to the aims of § 4248.

5.

Appellant argues that the availability of review hearings cures any absurdity. I disagree. To the contrary, review hearings underscore the absurdity in two ways. First, putting a large amount of already strained government resources toward early certification in order to meet the four year statute of limitations, followed by constant recertification review hearings, would be inefficient. Second, the earlier civil commitment proceedings must occur, the more likely the government is to meet its initial burden to show that the individual is a "sexually dangerous person." *See United States v. Springer*, 715 F.3d 535, 538 (4th Cir. 2013) (stating that at the committal hearing the government has the burden to show that the individual is a "sexually dangerous person" by clear and convincing evidence). This is so because the government will quite likely have a plethora of damning facts obtained from the individual's presentence investigation report. In this way, the system would be skewed in favor of commitment. Correspondingly, after committal, the committed individual is disadvantaged in seeking release because in a review hearing, the committed person carries the burden of showing that he is no longer a "sexually dangerous person" by a preponderance of the evidence. *See* 18 U.S.C. § 4248(e); *see also United States v. Wooden*, 217 F. Supp. 3d 843, 850–51 (E.D.N.C. 2016). Thus, applying the four

year limitations period would make civil commitments easier for the government to initially secure and more difficult for committed individuals to overcome.

Ultimately, these multiple absurdities compel me to conclude that § 1658(a)'s four year limitations period does not apply to § 4248 civil commitment proceedings.

## II.

Therefore, for the foregoing reasons, I concur in the judgment but not in the proposed path to judgment.